Nos. 2--00--1319 & 2--01--0075 cons.

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT 

_________________________________________________________________

HAROLD E. SCOTT and PETER G.    )  Appeal from the Circuit Court

SPELSON,                        )  of Du Page County.

                                )

Plaintiffs-Appellants,     )

                                )

v.                              )  No. 00--MR--483 

                                )

YORK WOODS COMMUNITY ASSOCIA-   )

TION,                           )  Honorable

                                )  Robert E. Byrne,

Defendant-Appellee.        )  Judge, Presiding.               __________________________________________________________________

                                                             TIMOTHY M. MLSNA,               )  Appeal from the Circuit Court

                                )  of Du Page County.

Plaintiff and Counter-     )

defendant-Appellant,       )

) 

v.                )  No. 98--CH--40

)

YORK WOODS COMMUNITY ASSOCIA-   )

TION; JOHN DINKEL; BARBARA      )

LANG; DANIEL MACKEY; GWEN       ) 

QUACKENBUSH; JOHN STYX; MICHAEL )

BORCHARDT; JOSEPH F. LIZZADRO;  )

EARL N. SILBER; and CYNTHIA     )

MANN TETEAK,                    )

                                )

       )  Honorable

Defendants and Counter-    )  Bonnie M. Wheaton, 

plaintiffs-Appellees.      )  Judge, Presiding.           ___________________________________________________________________

PRESIDING JUSTICE HUTCHINSON delivered the opinion of the court:

These consolidated appeals involve disputes between several homeowners in a residential community and those who claim to act on behalf of all the homeowners in the community.  Plaintiffs, Harold E. Scott, Peter G. Spelson, and Timothy M. Mlsna, live in York Woods in Oak Brook.  Defendant York Woods Community Association (the Association) asserts that it is the duly formed homeowners' association for York Woods.  The individual defendants belong to the Association's board of governors (the Board).  York Woods originated from a "Declaration of Protective Covenants" (the Declaration) recorded in 1962.  The original York Woods Community Association (the Old Association) was incorporated in 1963 but was dissolved in 1988.

Plaintiffs Scott and Spelson appeal a judgment declaring that the Association is the legitimate successor to the Old Association.  Plaintiff and counterdefendant Mlsna appeals a judgment declaring that the Association is the legitimate successor to the Old Association and striking down the Declaration's restrictions on the amendment process.  The court also invalidated several amendments to the Declaration (the 1989 covenants), but that ruling is not at issue here.  On appeal, plaintiffs have filed a single brief asserting that (1) the Association was not validly incorporated under the General Not For Profit Corporation Act of 1986 (the Act) (805 ILCS 105/101.01 
et seq
. (West 1996)) and thus did not inherit the Old Association's powers; and (2) the Declaration's "restrictive windows" for amendments are valid.  We agree with plaintiffs, and we reverse the judgments and enter judgments for plaintiffs.

To frame the issues, we must recount some of the checkered history of the York Woods community.  On October 5, 1962, a private developer recorded the Declaration.  Several sections of that document are pertinent here.  Article VI specifies the organization and powers of the homeowners' association.  It reads in part:

"1.  
Creation and Purposes

There shall be formed an Illinois not-for-profit corporation to be known as the York Woods Community Association *** whose purposes shall be to insure high standards of maintenance and operation of all property in York Woods reserved by the Declarant for the common use of all residents and owners of property therein ***."

Article VI elsewhere states that every record owner of property in the community shall become a member of the homeowners' association and shall have one vote on all matters submitted to a vote by the association.  Paragraph 7 of article VI provides that article VI may be amended at any time by the written consent of two-thirds of the members of the homeowners' association.

Article VII sets out the procedure for amending the covenants in the Declaration.  It provides in pertinent part:

"1. Each of the Covenants set forth in this Declaration shall continue and be binding as set forth in paragraph 2 of this Article VII for an initial period of 30 years from the date of 
October 4th
 1962, and thereafter for successive periods of 25 years each.

* * *

3.  The record owners in fee simple of the residential lots in York Woods may revoke, modify, amend or supplement in whole or in part any or all of the Covenants and conditions contained in this Declaration and may release from any part or all of said Covenants all or any part of the real property subject thereto, but only at the following times and in the following manner:

a. Any such change or changes may be made effective at any time within ten years from the date of recording of this Declaration if the record owners in fee simple of at least three-fourths of said lots consent thereto;

b. Any such change or changes may be made at the end of said initial 30 year period or any such successive 25 year period if the record owners in fee simple of at least two-thirds of said lots consent thereto at least five years prior to the end of any such period;

c. Any such consents shall be effective only if expressed in a written instrument or instruments executed and acknowledged by each of the consenting owners and recorded in the Office of the Recorder of Deeds of Du Page County, Illinois;

provided, however, that Article VI hereof may be amended at any time in the manner therein set forth."  (Emphasis in original.)

The Old Association was duly incorporated in 1963 and functioned according to the Declaration.  However, on August 1, 1988, the Illinois Secretary of State's office dissolved the Old Association, apparently for neglecting to timely file an annual report.  The parties agree that nobody from York Woods intended to cause the dissolution of the Old Association.  Indeed, no homeowner, officer, or Board member even knew about the dissolution until 1997, when attorney Walter O'Brien, who had just started to work for the homeowners' group, came across records of the dissolution.

Between the time the Old Association was dissolved and the York Woods community learned of the dissolution--approximately nine years--business continued as before.  The Old Association was no longer incorporated, but, as none of its members knew that, they did not alter their business practices.  Annual meetings took place consistently, as did elections of officers and Board members.

Shortly after O'Brien discovered that the Old Association had been dissolved, he told Joseph Lizzadro and Stewart Ward, who served as officers and Board members of what they had heretofore believed was the Old Association.  Lizzadro and Ward directed O'Brien to file articles of incorporation.  On August 20, 1997, O'Brien did so.  On August 28, 1997, the articles were recorded.

On January 15, 1998, Mlsna filed his complaint.  At this point, the complaint challenged only the 1989 covenants and some recently proposed amendments, alleging that the 1989 covenants were not approved in accordance with article VII of the Declaration and that the proposed amendments would also violate article VII.  The  newer amendments were never adopted and are not at issue on appeal.

On January 20, 1998, at an annual meeting, Lizzadro, Ward, and O'Brien disclosed that the Association had been incorporated.  They also told the meeting that the homeowners would need to decide whether to approve the incorporation.  The meeting was continued to February.  When the vote on the new incorporation was taken, 113 homeowners voted "yes," 66 voted "no," 5 abstained, and 74 did not attend the meeting or return ballots.

On July 15, 1999, the Association filed an amended counterclaim against Mlsna.  Count I of the counterclaim sought a declaration that the Association was properly incorporated and succeeded the Old Association's powers.  Count I relied partly on article VI, paragraph 1, of the Declaration, which states that "There 
shall
 be formed an Illinois not-for-profit corporation to be known as the York Woods Community Association." (Emphasis added.)  The Association alleged that the Declaration required the creation of the Association and that, in any event, the Association had been duly incorporated.  Count II of the counterclaim sought a declaratory judgment that article VII's restrictive windows for amendments (and identical restrictions in the 1989 covenants) were void as unreasonable burdens on property.

On July 15, 1999, Mlsna filed an "amendment" to his complaint.  As later amended, the amendment asked the court to declare that the Association was not a valid nonprofit corporation and could not succeed to the powers of the Old Association.  Mlsna's amendment asserted that, after the Old Association was dissolved, it could do only what it needed to wind up its affairs, which did not include incorporating the Association.  The amendment also alleged that the individual defendants had been acting illegally as the Board despite long having had notice that they could not properly do so.

The Association moved for summary judgment on the issue of whether it had the authority to act on behalf of the homeowners.  Emphasizing that the dissolution of the Old Association was unintended and resulted from a technical oversight, the Association also noted that the Declaration required the York Woods homeowners to form a nonprofit corporation to carry out the duties of the homeowners' association.  According to the Association, the homeowners had acted for nine years as a proper association, albeit an unincorporated one, and merely "reincorporated."  Also, the Association invoked section 112.16 of the Act (805 ILCS 105/112.16 (West 1996)), which allows a corporation undergoing dissolution to transfer assets to a newly formed corporation.

Mlsna responded that the Association was a new corporation, not a reinstatement or "reincorporation" of the Old Association.  Mlsna noted that reinstatement requires filing an application within five years of the dissolution (see 805 ILCS 105/112.45 (West 1996)) and that nobody had done so here.  Also, Mlsna contended, the Association could not rely on section 112.16 because the Old Association never adopted a plan to transfer its assets to a new entity (see 805 ILCS 105/112.17 (West 1996)).

The trial court ruled that the Association properly succeeded the Old Association and granted partial summary judgment in favor of the Association.  Mlsna then answered the amended counterclaim.  On June 7, 2000, Scott and Spelson filed their complaint, which alleged that the Association was not authorized to act on behalf of the homeowners because it had not been validly incorporated.  Scott and Spelson's complaint relied on section 102.35(a) of the Act (805 ILCS 105/102.35(a) (West 1996)), providing:

"When an unincorporated association or society, organized for any of the purposes for which a corporation could be formed under this Act, authorizes the incorporation of the association or society by 
the same procedure and affirmative vote of its voting members or delegates as its constitution, bylaws, or other fundamental agreement requires for an amendment to its fundamental agreement
 ***, then following the filing of articles of incorporation under Section 102.10 setting forth those facts 
and that the required vote has been obtained
 and upon the issuance of a certificate of incorporation, the association or society shall become a corporation and the members of the association or society shall become members of the corporation in accordance with provisions in the articles to that effect."  (Emphasis added.)  805 ILCS 105/102.35(a) (West 1996).

Scott and Spelson's complaint maintained that, after the Old Association was dissolved, the now unincorporated homeowners' association did not get the new Association ratified by the procedure and affirmative vote that the Declaration required for amendments.  Specifically, the Declaration could not be amended without a two-thirds vote of all the owners and certain formalities such as notarization and recording.  Yet, in 1998, only 113 homeowners out of 258 in all voted to approve the incorporation of the Association.  Scott and Spelson prayed for a declaration that the Association could not act on their behalf and that none of its acts had any effect.

Scott and Spelson then moved for summary judgment.  Again, they argued that the Association had not been incorporated by the required vote.  They also claimed that the Association was not a valid reinstatement of the Old Association because it was not incorporated within five years after the Old Association was dissolved.  See 805 ILCS 105/112.45(a) (West 1996).

The Association filed a response and a cross-motion for summary judgment.  Essentially, the Association defended its legitimacy on the same grounds it had used against Mlsna, noting that the Declaration required all York Woods homeowners to belong to a nonprofit corporate homeowners' association.  The Association also observed that until 1997 no one had challenged the Board's authority to act as before.  According to the Association, the homeowners had the right to "reincorporate" and, in any event, they had "reincorporated" after a proper vote.

In the Scott action, Judge Byrne granted summary judgment in favor of the Association and held that the Association properly succeeded to the powers of the Old Association.  The court reasoned that, as the Board, the officers, and the homeowners consistently conducted "business as usual" between 1988 and 1997, the incorporation of the Association, which the Declaration required, was a "mere formality" and did not require two-thirds approval.  The court added that section 102.35(a) of the Act did not require a two-thirds vote for incorporation because article VII of the Declaration (the "fundamental agreement") spoke only to the vote needed for amendments, not that needed for "reincorporation."

In the Mlsna action, Judge Wheaton conducted a bench trial.  Most of the evidence that the parties presented is not pertinent to this appeal; what is pertinent has been set out heretofore.  After the trial, the court granted the Association's counterclaim, holding that article VII's "window for amendment" was an unreasonable restraint on alienation.  The judge explained that she had not heard "any explanation for this long period *** [25 to 30 years] between amendments."  Thus, the Association's members were free to amend the Declaration at any time as long as they followed the valid rules for executing and acknowledging amendments.  The judgment also invalidated the 1989 covenants.

Scott and Spelson timely appealed.  The trial court in the Mlsna action modified its judgment to make the invalidation of the 1989 covenants operate prospectively, and Mlsna timely appealed.  We have consolidated the appeals.  Plaintiffs have filed one brief on appeal, and, in discussing the issues they raise, we shall not distinguish among plaintiffs unless the context requires.

On appeal, plaintiffs argue first that the trial court erred as a matter of law when it held that the Association has the power to act on behalf of them or any other York Woods homeowners.  We agree with plaintiffs that the Association is not a valid not-for-profit corporation that can succeed to the powers of the Old Association.  Therefore, we reverse the judgments of the trial courts on this issue and enter judgments for plaintiffs.

We note that, in the Scott action, the trial court decided the "reincorporation" issue on cross-motions for summary judgment (see 735 ILCS 5/2--1005(c) (West 2000)) and, in the Mlsna action, the court decided the same issue after a trial.  This procedural difference has no ultimate significance.  In either appeal, the pertinent facts are undisputed and we conclude that the only sound conclusion is that the "reincorporation" was invalid.  Thus, all plaintiffs are entitled to judgment as a matter of law on this issue.  See generally 
Petrovich v. Share Health Plan of Illinois, Inc.
, 188 Ill. 2d 17, 30-31 (1999) (summary judgment is proper when material facts and the reasonable inferences to draw from those facts are not in dispute); 
Maple v. Gustafson
, 151 Ill. 2d 445, 453 (1992) (judgment 
n.o.v.
 is proper if, and only if, the evidence, viewed most favorably to the prevailing party, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand).

We agree with plaintiffs that the incorporation of the Association was ineffective because the homeowners, acting as an unincorporated association, did not follow section 102.35(a) of the Act.  Statutory language must receive its plain meaning.  
Advincula v. United Blood Services
, 176 Ill. 2d 1, 17 (1996).  Section 102.35(a) plainly tells an unincorporated association how to become a nonprofit corporation.  First, the association must obtain authorization "by the same procedure and affirmative vote of its voting members or delegates as its *** fundamental agreement requires for an amendment to [the association's] fundamental agreement."  805 ILCS 105/102.35(a) (West 1996).  Second, the association must file articles of incorporation that reflect that the required vote "
has been obtained
."  (Emphasis added.)  805 ILCS 105/102.35(a) (West 1996).  Here, the incorporators took neither step.

The parties recognize that the Declaration is the "fundamental agreement" that governed the homeowners' rights and duties even after the Old Association was dissolved.  According to the Declaration, amendments must have the written approval of two-thirds of the homeowners.  Thus, under section 102.35(a), two-thirds of the homeowners had to approve the incorporation of the Association.  Simply said, 113 is not two-thirds of 258.  Furthermore, the articles of incorporation did not attest that the needed vote had already been obtained.  This omission is understandable because the articles were filed before any vote was taken, but section 102.35(a) plainly bars such precipitate action.

The Association was never validly incorporated because the needed homeowners' vote was "too little and too late."  We cannot agree with the trial court in 
Scott
 that the "reincorporation" of the Association was a mere "formality."  Were that so, there would be no reason for the Act to specify the procedures needed to reinstate a dissolved corporation--procedures that were never followed here.  The homeowners may not now reinstate the Old Association, as too much time has passed.  From all the record shows, a new homeowners' association has yet to be approved and incorporated according to law.  The Association remains a nullity.

The Association (or those individuals who assert its existence) attempts in several ways to avoid the plain commands of the Act and the Declaration.  First, the Association observes that the Declaration requires the York Woods homeowners to create and join a nonprofit corporation that shall act as a homeowners' association.  This is true but does not explain how the private company that recorded the Declaration could have excused homeowners from complying with state law.  The Declaration's requirement that an incorporated homeowners' association be formed does not allow that association to be formed illegally.

Second, the Association appears to claim that, because its members continued to function as a homeowners' association even after the Old Association was dissolved, the formal incorporation of the Association was proper.  The factual premise of this argument is correct, but the conclusion does not follow.  The issue before us is not whether everything or anything the homeowners did collectively between 1988 and 1997 was unlawful but rather whether the Association was properly formed.  It was not.  Moreover, the Association seems to suggest that it should be excused from complying with the Act solely because its members took so long to learn that the Old Association had been dissolved.  We decline to abrogate the Act merely because people who were subject to it were  slow to comply with it.

Third, the Association invokes section 112.16(c) of the Act, under which certain assets held by a corporation that is undergoing a dissolution shall be transferred or conveyed to "one or more domestic or foreign corporations, societies or organizations engaged in activities substantially similar to those of the dissolving corporation, pursuant to a plan of distribution adopted as provided in this Act."  805 ILCS 105/112.16(c) (West 1996)).  Mlsna has asserted that the Old Association has not adopted any such plan, and the record does nothing to undercut that assertion.  Even assuming that the Old Association fulfilled section 112.16(c), we still do not see how that could have legitimized the unlawful incorporation of the Association.

We conclude that, as a matter of law, the Association is not a valid corporation under the Act.  Therefore, we reverse the judgment in 
Scott
 and the first part of the judgment in 
Mlsna
 and enter judgments for plaintiffs.  We need not settle exactly what the homeowners may do as an unincorporated association.  However, the Declaration still gives each homeowner the right to enforce the Declaration's covenants.  Also, because the Declaration requires an incorporated homeowners' association, an unincorporated homeowners' association may exist only as long as is reasonably needed to incorporate a new association lawfully.

We turn now to the second issue on appeal.  Plaintiffs argue that the trial court erred in invalidating article VII's restrictive windows for amendments.  Plaintiffs maintain that the Declaration's restrictions on amendments are entitled to a presumption of validity that the Association has not rebutted.  We agree.

We have not found a published Illinois case that decided the validity of a declaration's restrictions on amendments.  However, the law is settled that a declaration's restrictions on the use of property carry a strong presumption of validity and will be upheld unless the party challenging them proves that they are wholly arbitrary in their application, violate public policy, or abrogate some fundamental constitutional right.  
Board of Directors of 175 East Delaware Place Homeowners Ass'n v. Hinojosa
, 287 Ill. App. 3d 886, 892 (1997); 
Apple II Condominium Ass'n v. Worth Bank & Trust Co.
, 277 Ill. App. 3d 345, 350-51 (1995).  As we explain, we think that article VII's limitations on how often the Declaration may be amended deserve no less strong of a presumption of validity.

Article VII does not actually restrict how homeowners may use their properties.  Instead, it limits only how often the homeowners acting collectively may change the use restrictions that the Declaration sets out elsewhere.  An amendment to the restrictive covenants may as easily lessen as increase the homeowners' freedom to  use their own property.  Also, making the restrictive covenants semipermanent may promote rather than restrain the free alienation of property by providing stability and predictability to prospective owners.  Thus, if use restrictions are presumed valid, amendment restrictions deserve the same presumption.

We turn to the restrictions at issue.  As pertinent here, article VII provides, in effect, that (1) the Declaration's covenants shall be binding until October 4, 1992; (2) thereafter, any amendment may take effect only at the end of one of a series of 25-year intervals (
i.e.
, October 4, 2017, October 4, 2042, and so on); and (3) any such amendment must be approved in writing by a two-thirds vote at least five years before it actually takes effect at the end of the 25-year interval.  The trial court in the Mlsna action ruled that these restrictions violated public policy because Mlsna produced no evidence that they were necessary.  This reasoning reversed the parties' burdens.  The Association, which brought the challenge to the restrictions, had to overcome their presumption of validity.  The Association failed to carry this burden.

Although the amendment restrictions may strike some people as unwise, the Association never identified any statute or other expression of public policy that might bar them.  We cannot fill in the gaps left by the Association's failure to supply some coherent basis to invalidate the restrictions.  Furthermore, people who consider whether to join the York Woods community or remain there make that decision knowing full well that the Declaration will be exceedingly difficult to change.  Those who find that fact unsettling have ample alternatives and may just decline their membership in the community.  See 
Seven Bridges Courts Ass'n v. Seven Bridges Development, Inc.
, 306 Ill. App. 3d 697, 705 (1999).  There is no reason to conclude that the restrictive windows are impermissible.

The Association asserts that plaintiffs have not cited "any case in which such severe amendment restrictions were challenged and upheld."  However, the Association has identified no case in which such severe amendment restrictions were invalidated.  
Gale v. York Center Community Cooperative, Inc.
, 21 Ill. 2d 86 (1960), on which the Association relies, does state that restraints on 
alienation
 are disfavored unless they are reasonably designed to further accepted ends.  
Gale
, 21 Ill. 2d at 91-92.  However, article VII does not restrain alienation and, as we have explained, it carries at least as strong a presumption of validity as we would accord the use restrictions in the Declaration.  The other cases the Association cites are also not on point.

The trial court erred in invalidating article VII's "restrictive windows."  We reverse the trial court's grant of the Association's counterclaim, and we enter judgment for plaintiff Mlsna on the counterclaim.

The judgment of the circuit court of Du Page County in case No. 2--00--1319 is reversed, and judgment is entered for plaintiffs Scott and Spelson.

The judgment of the circuit court of Du Page County in case No. 2--01--0075 is reversed, and judgment is entered for plaintiff Mlsna.

Judgments reversed.

GEIGER and CALLUM, JJ., concur.