No. 2--03--1329

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

YORK WOODS COMMUNITY      ) Appeal from the Circuit Court

ASSOCIATION,      ) of Du Page County.

      ) 

Plaintiff-Appellant and Cross-      )

Appellee,      ) 

      )

v.      ) No. 02--L--826

      )

WALTER J. O'BRIEN II and O'BRIEN AND     )

ASSOCIATES, PC,        ) 

      ) Honorable

Defendants-Appellees and Cross-      ) Hollis L. Webster,

Appellants.        ) Judge, Presiding.

______________________________________________________________________________

PRESIDING JUSTICE O'MALLEY delivered the opinion of the court:

In 1997, plaintiff, York Woods Community Association (plaintiff or the Unincorporated Association) retained defendants, Walter J. O'Brien II (O'Brien) and O'Brien & Associates, PC (collectively, defendants), to incorporate the association.  Defendants did so, creating a not-for-profit corporation also named the York Woods Community Association (New YWCA).  The incorporation of the New YWCA led to two lawsuits in which individual York Woods homeowners challenged the validity of the New YWCA.  The New YWCA prevailed in both suits.  The cases were consolidated on appeal, and we reversed, holding that the New YWCA had not been validly incorporated.  See 
Scott v. York Woods Community Ass'n
, 329 Ill. App. 3d 492 (2002)
.  Following our decision, plaintiff sued defendants for legal malpractice, breach of contract, and breach of fiduciary duty.  Defendants moved for summary judgment pursuant to section 2--1005 of the Code of Civil Procedure (Code) (735 ILCS 5/2--1005 (West 2002)), arguing that plaintiff lacked standing, that no attorney-client relationship existed, and that plaintiff's complaint was barred by the statute of limitations.  The trial court found that issues of fact precluded summary judgment on timeliness grounds, but agreed that plaintiff lacked standing, and granted summary judgment to defendants.  Plaintiff appealed, and defendants cross-appealed the statute of limitations ruling.  We reverse and remand, holding that plaintiff had standing to sue defendants and that its complaint was timely.

In our opinion in 
Scott
, we set out the background of this case in full detail.  See 
Scott
, 329 Ill. App. 3d at 493-98.
  Thus, we set out only a brief account here.  In 1962, the private developer of the York Woods residential community recorded a "Declaration of Protective Covenants" (Declaration), which provided for the creation of "an Illinois not-for-profit corporation to be known as the York Woods Community Association."  An association called the York Woods Community Association (Old YWCA) was incorporated in 1963 and functioned pursuant to the Declaration.

In 1988, the Illinois Secretary of State dissolved the Old YWCA, apparently for neglecting to timely file an annual report.  No homeowner, officer, or board member knew of the dissolution until 1997.  Between 1988 and 1997, however, the Old YWCA continued operating, with no change in business practices, as the Unincorporated Association
.

In 1997, O'Brien, who had just started working for the Unincorporated Association, discovered that the Old YWCA had been dissolved.  He informed two board members, Joseph Lizzadro and Stewart Ward, of his discovery, and they instructed him to file articles of incorporation.  O'Brien did so, and on August 28, 1997, the articles were recorded.  The new not-for-profit corporation was also called the York Woods Community Association (New YWCA).

On January 15, 1998, Timothy Mlsna, a resident of York Woods, filed a lawsuit against the New YWCA, challenging certain amendments that had been made to the Declaration in 1989.

On January 20, 1998, at an annual association meeting, Lizzadro, Ward, and O'Brien disclosed to the homeowners that the New YWCA had been incorporated.  They informed the homeowners that they needed to decide whether to approve the incorporation.  A vote was taken, and a simple majority of those voting, but not a majority of all homeowners, voted to approve the incorporation.  From this point forward, the homeowners apparently were divided as to which association, the Unincorporated Association or the New YWCA, was the valid homeowners' association.  Both continued to operate with separate boards.  In February 1998, Mlsna was elected to the board of the Unincorporated Association.  He believed that the New YWCA had not been validly formed, and he communicated this belief to O'Brien and the homeowners. 

On July 15, 1999, the New YWCA filed a counterclaim in the Mlsna litigation, seeking a declaration that the New YWCA was properly incorporated and had succeeded to the Old YWCA's powers.  That same day, Mlsna amended his complaint, seeking a declaration that the New YWCA was not a valid not-for-profit corporation and that it could not succeed to the powers of the Old YWCA.  The New YWCA moved for summary judgment, which the court granted in part.  The case proceeded to trial and the New YWCA prevailed.

In June 2000, two other York Woods residents, Harold Scott and Peter Spelson, filed a complaint against the New YWCA, also alleging that the New YWCA had not been validly incorporated.  The New YWCA moved for summary judgment, and the court granted the motion.

Mlsna, Scott, and Spelson appealed, and we consolidated their appeals.  We reversed both trial courts, holding that the New YWCA was not a valid not-for-profit corporation and that it could not succeed to the powers of the Old YWCA.  See 
Scott
, 329 Ill. App. 3d at 498-99.  We reasoned that, when the Unincorporated Association attempted to incorporate, it did not comply with section 102.35(a) of the General Not For Profit Corporation Act of 1986 (the Act) (805 ILCS 105/101.01 
et seq
. (West 1996)).  Section 102.35(a) of the Act requires that, to become a not-for-profit corporation, an unincorporated association must first obtain authorization from its members by the same procedure it uses for amendments to the fundamental agreement (in this case, the Declaration).  Second, the association must file articles of incorporation reflecting that this required vote had been obtained.  See 805 ILCS 105/102.35(a) (West 1996).  The record revealed that (1) the Unincorporated Association did not obtain a two-thirds majority authorization, as required by the Declaration's amendment procedure, and (2) the articles were filed before the vote had been obtained.  Thus, the New YWCA was never validly incorporated.  See 
Scott
, 329 Ill. App. 3d at 499.  We concluded:

"[T]he [New YWCA] is not a valid corporation under the Act.  ***  We need not settle exactly what the homeowners may do as an unincorporated association.  However, the Declaration still gives each homeowner the right to enforce the Declaration's covenants.  Also, because the Declaration requires an incorporated homeowners' association, an unincorporated homeowners' association may exist only as long as is reasonably needed to incorporate a new association lawfully."  
Scott
, 329 Ill. App. 3d at 500.

In July 2002, plaintiff, using the name York Woods Community Association, filed the present lawsuit against defendants, alleging legal malpractice, breach of contract, and breach of fiduciary duty.  All three counts were based on O'Brien's failed attempt at incorporating the New YWCA.  The complaint alleged that the Unincorporated Association had an attorney-client relationship with defendants and that defendants breached their duty to exercise reasonable care by, 
inter alia
, failing to properly incorporate the New YWCA.  It alleged as damages the fees paid to defendants, increased insurance costs, and the costs incurred by Mlsna in challenging the New YWCA.

Defendants moved for summary judgment.  They argued that (1) plaintiff lacked standing to bring the action, (2) there was no attorney-client relationship between plaintiff and defendants, and (3) the complaint was barred by the statute of limitations.  The court first found that issues of fact precluded summary judgment on timeliness grounds, but ultimately granted summary judgment to defendants, finding that plaintiff lacked standing.  In its ruling, the court stated:

"[T]he end result is that we have a plaintiff, the York Woods Condominium [
sic
] Association, that the appellate court has already ruled is not legally incorporated.  And this is not the same entity that traveled down the road from 1963 onward.

***  I can only conclude that it is a new association, and therefore would lack standing to sue Mr. O'Brien as an attorney for the legal work that he provided to the older association that he alleged was legal and later found by the appellate court not to be legally incorporated."

Plaintiff appealed, and defendants cross-appealed the statute of limitations ruling.  
We review the grant of summary judgment 
de novo
.  
Travelers Insurance Co. v. Eljer Manufacturing, Inc.
, 197 Ill. 2d 278, 292 (2001).  A motion for summary judgment is properly granted only when the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  
Travelers Insurance
, 197 Ill. 2d at 292.  In considering a summary judgment motion, the court has a duty to construe the evidence strictly against the movant and liberally in favor of the nonmoving party.  
Travelers Insurance
, 197 Ill. 2d at 292.
 

A. Standing

"The doctrine of standing requires that a party have a real interest in the action brought and its outcome."  
Bridgestone/Firestone, Inc. v. Aldridge
, 179 Ill. 2d 141, 147 (1997).  
Plaintiff argues that the trial court misconstrued the facts of the case and erred in finding that plaintiff lacked standing to sue defendants. 
 We agree.

As previously discussed, the Old YWCA was dissolved in 1988 and became the Unincorporated Association.  In 1997, the Unincorporated Association retained defendants to reincorporate it.  O'Brien attempted to do so, creating the New YWCA.  We determined in 
Scott
 that the New YWCA was not a valid corporation because the Unincorporated Association did not comply with the requirements of the Act.  
Scott
, 329 Ill. App. 3d at 499.  In so holding, we recognized the continuing existence of the Unincorporated Association.  See 
Scott
, 329 Ill. App. 3d at 500.

Now, the Unincorporated Association has sued defendants for legal malpractice.  As the Unincorporated Association is clearly the entity that retained defendants, it has standing to sue them.   It appears that the trial court, in finding that plaintiff lacked standing, erroneously believed that plaintiff was actually the New YWCA, an entity that we held had not been validly incorporated.

Defendants first respond that plaintiff was not validly formed pursuant to the Declaration, which requires a not-for-profit corporation.  According to defendants, because plaintiff is not a not-for-profit corporation, it lacks standing.  This argument misses the point.  The fact that plaintiff is not incorporated pursuant to the Declaration is immaterial for the purposes of standing.  In order to have standing, plaintiff needs only a real interest in the action and the capacity to sue.  Both of these requirements are met.  First, plaintiff is the entity that retained defendants.  Second, as an unincorporated association, plaintiff has the ability to bring a lawsuit in its name.  See 735 ILCS5/2--209.1 (West 2002).

Defendants next respond that plaintiff has waived its argument that it may bring an action as an unincorporated association.  Defendants assert that plaintiff raised this claim for the first time in its appellate brief and that prior to that point plaintiff argued only
 that it was the successor of the Old YWCA.  This argument lacks merit.  Plaintiff's complaint clearly identifies plaintiff as "an unincorporated association acting on its own behalf," and plaintiff asserted in its response to defendants' motion for summary judgment that it was bringing the lawsuit as an unincorporated association.

B. Statute of Limitations

We now turn to defendants' cross-appeal.  Defendants argue that the trial court erred in denying them summary judgment on the ground that the complaint was untimely.  Plaintiff responds that the limitations period did not begin to run until April 2002, when we issued our decision in 
Scott
, and hence, the complaint was timely. 
 A suit for legal malpractice must be brought "within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought."  735 ILCS 5/13--214.3(b) (West 2002).  
Under the Code, "the two-year period does not necessarily begin the day the plaintiff suffers his injury; rather, the period starts when the plaintiff knows or should know facts that would cause him to believe that his injury was wrongfully caused."  
Romano v. Morrisroe
, 326 Ill. App. 3d 26, 28 (2001).  "The injury is not the negligent act itself; it is something caused by the negligent act or omission for which the plaintiff may seek damages."  
Romano
, 326 Ill. App. 3d at 28.  "No cause of action accrues without actual damages, and damages are only speculative if their existence itself
 is uncertain."  
Romano
, 326 Ill. App. 3d at 28.  "Ordinarily, when a party becomes charged with such knowledge is a question of fact, and judgment should be entered as a matter of law only when the undisputed facts allow for only one conclusion."  
Romano
, 326 Ill. App. 3d at 28.

Defendants argue that the limitations period began to run in January 1998, when Mlsna filed his complaint against the New YWCA.  They assert that plaintiff was then on notice that it had been injured, because it had incurred attorney fees in relation to O'Brien's improper legal services.  They rely on 
Palmros v. Barcelona
, 284 Ill. App. 3d 642 (1996).  There, we held that "[a]ttorney fees incurred as a proximate result of a lawyer's malpractice are damages that make a cause of action complete and thus may start the running of the limitations period."  
Palmros
, 284 Ill. App. 3d at 647.   Initially, we note that it was Mlsna, not plaintiff, who sued the New YWCA in 1998.  While it is true that Mlsna was a member of the board of the Unincorporated Association, and that plaintiff here seeks to recover Mlsna's attorney fees, Mlsna and plaintiff nevertheless remain separate entities
.

Even if it was plaintiff who incurred attorney fees in the Mlsna litigation, defendants' argument still fails.  
Palmros
 does not state that the mere incurrence of attorney fees automatically gives rise to a cause of action for legal malpractice.  
Rather, "the incurring of additional attorney fees may trigger the running of the statute of limitations ***, but only where it is clear, at the time the additional fees are incurred, that the fees are directly attributable to former counsel's neglect." 
  
Lucey v. Law Officers of Pretzel & Stouffer, Chartered
, 301 Ill. App. 3d 349, 355 (1998)
.

Here, when attorney fees were incurred in the Mlsna litigation, it was not at all clear that those fees were directly attributable to defendants' malpractice.  At that point, the New YWCA had not yet been declared invalid.  Thus, damages remained speculative, and no cause of action had accrued.  See 
Romano
, 326 Ill. App. 3d at 28.  Rather, we agree with plaintiff that the limitations period did not begin running until our decision in 
Scott
.  It was at that point that plaintiff learned that the incorporation of the New YWCA had failed and that O'Brien had potentially committed legal malpractice.  See 
Romano
, 326 Ill. App. 3d at 31 (
"a cause of action for legal malpractice rarely will accrue prior to the entry of an adverse judgment *** [in] the underlying action in which the plaintiff had become entangled due to the alleged negligence of his attorney").  
In other words, the invalidation of the New YWCA was the injury caused by O'Brien's negligent act for which plaintiff is seeking damages.  See 
Romano
, 326 Ill. App. 3d at 28.  Plaintiff's malpractice action was filed within two years of the 
Scott
 decision and, hence, was timely.

We note, moreover, the strong policy rationale underlying our decision.  Under defendants' argument, plaintiff would have been required to file a malpractice suit in 1998, the outcome of which would have been entirely dependent on the result in 
Scott
.  In 
Romano
, we counseled against such "prophylactic malpractice cases," noting that they do not promote judicial economy.  
Romano
, 326 Ill. App. 3d at 32; see also 
Lucey
, 301 Ill. App. 3d at 357.  Here, had 
Scott
 been decided in defendants' favor, "the malpractice case would have spent over [four] years on a court docket, wasting judicial resources on a case in which no one was injured."  
Romano
, 326 Ill. App. 3d at 32.  We reiterate our admonition against such prophylactic malpractice cases.

The judgment of the circuit court of Du Page County is reversed, and the cause is remanded.

Reversed and remanded.

McLAREN and GILLERAN JOHNSON, JJ., concur.