2019 IL App (1st) 172430

FIRST DISTRICT
SECOND DIVISION
January 15, 2019

No. 1-17-2430

| | | |
|---|---|---|
| CONSTRUCTION SYSTEMS, INC, d/b/a Construction Systems of Minnesota, | ) ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 16 L 3248 |
| | ) | |
| FAGELHABER, LLC, n/k/a Thompson Coburn LLP, d/b/a Thompson Coburn FagelHaber, | ) ) ) | Honorable John C. Griffin, Judge Presiding. |
| | ) | |
| Defendant-Appellee. | ) | |

JUSTICE MASON delivered the judgment of the court, with opinion.
Justices Pucinski and Hyman concurred in the judgment and opinion.

## OPINION

¶ 1 We revisit this legal malpractice action brought by plaintiff Construction Systems, Inc. (d/b/a Construction Systems of Minnesota) (Construction Systems) following the trial court's grant of summary judgment in favor of defendant FagelHaber, LLC (n/k/a Thompson Coburn LLP, d/b/a Thompson Coburn FagelHaber) (FagelHaber) on the basis that Construction Systems filed its action outside the two-year statute of limitations. On appeal, Construction Systems claims that FagelHaber's negligence was not plainly obvious but only became known after the underlying case settled, which then commenced the statute of limitations. We find that Construction Systems knew or should have known of FagelHaber's negligence by early 2005 and that its legal malpractice claim filed more than two years later in January 2009 is time-barred. Accordingly, we affirm.

¶ 2                                                    I. Background

¶ 3          The facts of this case were set forth in detail in our earlier opinion *Construction Systems, Inc. v. FagelHaber, LLC*, 2015 IL App (1st) 141700, and we describe here only the facts and proceedings relevant to this appeal.

¶ 4          Construction Systems provided steel fabrication materials and labor for a building project located at 6 North Michigan Avenue in Chicago, Illinois. *Id.* ¶ 3. After Construction Systems failed to receive payments for its work that it furnished at the property, it retained FagelHaber to record a lien against the property under the Mechanics Lien Act (Act) (770 ILCS 60/0.01 *et seq.* (West 2012)) to protect its interest and collect the outstanding balance that totaled $3,146,200. *Construction Systems, Inc.*, 2015 IL App (1st) 141700, ¶ 6. On April 3, 2003, FagelHaber completed a tract search on the property. *Id.* ¶ 7. About a month later on May 6, 2003, Cosmopolitan Bank and Trust (Cosmopolitan) recorded a mortgage on the property. *Id.* On August 6, 2003, without updating the tract search, FagelHaber served notice of Construction Systems' mechanic's lien on the project's owner and construction manager but did not serve notice on Cosmopolitan. *Id.* On October 6, 2003, FagelHaber recorded a mechanic's lien against the property in the amount of $3,146,200, but the lien did not list Cosmopolitan as an interested party, and the bank was also not included on the service list. *Id.* On December 19, 2003, FagelHaber performed a second tract search and discovered Cosmopolitan's mortgage recorded against the property. *Id.* ¶ 8.

¶ 5          Under section 24(a) of the Act (770 ILCS 60/24(a) (West 2012)), a subcontractor

            "furnishing labor, materials, fixtures, apparatus, machinery, or services *** shall within
            90 days after the completion thereof *** cause a written notice of his or her claim and the
            amount due or to become due thereunder, to be sent by registered or certified mail *** or

personally served on the owner of record *** *and to the lending agency, if known*." (Emphasis added.)

As used in the statute, the phrase " 'if known' " means " 'if discoverable by the subcontractor through searching title recording records.' " *Petroline Co. v. Advanced Environmental Contractors, Inc.*, 305 Ill. App. 3d 234, 238 (1999) (quoting *Hill Behan Lumber Co. v. Irving Federal Savings & Loan Ass'n*, 121 Ill. App. 3d 511, 514 (1984)). A subcontractor is deemed to have constructive knowledge of a lender who properly recorded its mortgage against the property. *Parkway Bank & Trust Co. v. Meseljevic*, 406 Ill. App. 3d 435, 447 (2010). If a subcontractor fails to provide a known lender with the required 90-day notice under section 24, the subcontractor's lien is unenforceable against the lender. *Id.* Unlike a subcontractor, an original contractor is not subject to the 90-day statutory notice requirement. *Id.*

¶ 6        Because Construction Systems and various subcontractors had recorded mechanic's liens on the property, litigation ensued over the recorded liens. *Construction Systems, Inc.*, 2015 IL App (1st) 141700, ¶ 8. Both Construction Systems and First Bank of Oak Park (FBOP), as successor in interest to Cosmopolitan, joined the litigation. *Id.* Dissatisfied with FagelHaber's representation in the lien litigation, Construction Systems retained Karen Berres, of Fuller & Berres, as substitute counsel, and FagelHaber was allowed to withdraw. *Id.* ¶ 9. A dispute arose between Construction Systems and FagelHaber regarding outstanding fees, and on November 10, 2004, the parties executed a general release in settlement of the fee dispute. *Id.* ¶¶ 9-10, 14.

¶ 7        Years later, in December 2007, Construction Systems and FBOP agreed to settle the underlying lien claim, and FBOP paid $1,825,000 to Construction Systems in settlement, or $1,321,200 less than its recorded lien. *Id.* ¶ 12.

¶ 8        On January 27, 2009, Construction Systems sued FagelHaber for legal malpractice asserting that FagelHaber's failure to perfect Construction Systems' mechanic's lien resulted in

its lien being subordinate to Cosmopolitan's mortgage lien. *Id.* ¶ 13. Construction Systems and FagelHaber then litigated the issue of whether the general release executed in connection with the outstanding fee dispute included a release of legal malpractice actions. The trial court granted summary judgment in FagelHaber's favor finding that the executed release barred known and unknown claims, including legal malpractice actions. *Id.* ¶ 20. Construction Systems appealed, and we reversed, finding there was a genuine issue of material fact whether legal malpractice claims were contemplated by the parties when they executed the general release relating to the outstanding fee dispute. *Id.* ¶ 57.

¶ 9        Following remand, FagelHaber moved for summary judgment asserting that the statute of limitations barred Construction Systems' legal malpractice action because no genuine issue of material fact existed that Construction Systems knew or should have known between February 2005 and July 2006 about the failure to serve the required statutory notice of its mechanic's lien on Cosmopolitan. Because Construction Systems did not file its malpractice action until January 27, 2009, FagelHaber claimed that Construction Systems' action was time-barred. Construction Systems responded that the statute of limitations did not commence until it settled the underlying lien litigation on December 12, 2007, or, at the earliest, on August 20, 2007, when the trial court ruled on the parties' cross-motions for summary judgment addressing the lien priority issue. Construction Systems contended that its action was timely because it was filed within two years from either December 2007 or August 2007.

¶ 10        On October 12, 2016, the trial court denied FagelHaber's motion for summary judgment finding that FagelHaber did not make a *prima facie* showing that there was no genuine issue of material fact as to when Construction Systems suffered an actual injury because it failed to establish that any of the 2005 and 2006 attorney fees paid to Berres, as substitute counsel, were directly attributable to FagelHaber's negligence.

¶ 11    Based on the trial court's finding, FagelHaber filed a motion to compel Berres to produce the invoices issued to Construction Systems from 2005 to 2006.[1] The trial court granted FagelHaber's motion to compel. Berres, through her law firm, complied with the trial court's order. Among other things, during the period from January 31, 2005, through September 28, 2005, Berres billed time related to "priority issue," "review recording dates and cases on priority," "research on notice to lender," and "research on priority of lender."

¶ 12    After submitting the invoices, Berres was deposed and questioned about the billing entries and the work she performed for Construction Systems. According to Berres, her firm sent Construction Systems an invoice summarizing her work about every two months, and Construction Systems was, for the most part, current in paying the charges between July 2004 and July 2006. In particular, the invoice dated March 21, 2005, reflected services Berres rendered in February and March 2005. It is apparent that Construction Systems timely paid that invoice because no outstanding balance was reflected on the next invoice dated May 15, 2005, for services rendered in March and April 2005.

¶ 13    Regarding her billing entries, Berres explained that a February 9, 2005 entry corresponded to a letter dated February 10, 2005, that Berres sent to Edward Filer, Construction Systems' former attorney. The letter states in relevant part:

> "As you know, we now represent Construction Systems, Inc. ('CSI') in the [Construction Systems, Inc. v. 6 North Michigan] matter. An issue is surfacing with respect to the priority of CSI's lien over the mortgage lien of Cosmopolitan

---

[1] On July 12, 2010, FagelHaber filed a motion to compel production of attorney's invoices issued to Construction Systems, including those invoices issued for 2005-06. A different judge held a hearing on FagelHaber's motion to compel and ruled that Construction Systems was only required to produce the billing invoices related to Construction Systems' fee dispute, which excluded billing invoices for 2005-06.

Bank, and I am hoping that you will be able to shed some light on what appears to be a problematic situation.

Cosmopolitan recorded its mortgage on May 6, 2003. CSI sent its notice of lien on August 7, 2003 and recorded its lien on October 6, 2003. As far as I can tell from the materials you have provided, CSI did not send notice to Cosmopolitan Bank.

If there is anything within your possession which would support an argument that Cosmopolitan Bank had notice of CSI's claim, it would certainly seem to be in the best interest of both your firm and mine for you to make it available to me."

¶ 14    Berres also explained that in March 2005, she researched alternate ways of proving notice, and she looked for documentation that would possibly establish that Cosmopolitan had actual notice of Construction Systems' work on the project and the amount that was owed to Construction Systems. Berres acknowledged that as of March 28, 2005, she believed there was a defect in perfecting Construction Systems' mechanic's lien, but she did not know whether FBOP knew about the defect. Berres further explained that during the period from March 2005 to April 2005, she began drafting an amended counterclaim for mechanic's lien foreclosure raising an alternative argument that Construction Systems had an original contract with the project's owner. Berres stated that if Construction Systems could establish that it was an original contractor as opposed to a subcontractor, Construction Systems would not be required to serve notice, and the failure to serve notice on Cosmopolitan would then be irrelevant. Construction Systems filed the amended counterclaim on April 20, 2005, and Berres billed Construction Systems for her work in drafting the pleading. Berres also devised an *alter ego* argument claiming that Construction Systems had a *de facto* contract with the project's owner because there was insufficient

separation between the owner and construction manager. On September 28, 2005, Construction Systems filed a second amended counterclaim incorporating the *alter ego* argument, and Berres billed Construction Services for her work in drafting that pleading.

¶ 15      Berres also billed Construction Systems for her work in preparing a motion for partial summary judgment with respect to the lien priority issue involving FBOP. On March 22, 2007, Construction Systems moved for summary judgment arguing that section 24's notice requirement did not apply because it was an original contractor, not a subcontractor. In the alternative, Construction Systems argued that even if it was a subcontractor, it was not required to give the statutory notice because Cosmopolitan had actual notice of its work on the project. FBOP filed a cross-motion for summary judgment arguing that Construction Systems, as a subcontractor, was required to serve Cosmopolitan—a known lender that properly recorded its interest—with the required statutory notice, and the failure to provide that notice was fatal to its lien claim against FBOP. On August 29, 2007, the trial court denied Construction Systems' and FBOP's cross-motions for summary judgment.

¶ 16      Relying on Berres' additional testimony and the invoices that were produced after the trial court's October 12 order, FagelHaber filed a motion to reconsider the denial of its motion for summary judgment arguing that Berres billed Construction Systems in 2005 and 2006 for services directly attributable to FagelHaber's neglect, which commenced the two-year statute of limitations. FagelHaber also cited to this court's opinion in *Nelson v. Padgitt*, 2016 IL App (1st) 160571, which was decided on November 1, 2016, shortly after the trial court's order denying FagelHaber's motion. *Nelson* reiterated that the statute of limitations in a legal malpractice action may be triggered before an adverse judgment is entered if it was " 'plainly obvious' " that a client was injured as a result of professional negligence or when an attorney's neglect was a direct cause of the legal expenses incurred by the client. *Id.* ¶ 14.

¶ 17     On reconsideration, the trial court agreed with FagelHaber that Berres was aware of the notice issue by January 2005 and on March 21, 2005, billed Construction Systems for services including researching the issue. The trial court found that Construction Systems suffered damages as early as March 21, 2005 (the invoice date for legal services rendered in January and February 2005), and Construction Systems' legal malpractice claim accrued at that time. Because Construction Systems filed its legal malpractice action more than two years after it accrued, the trial court granted FagelHaber's motion to reconsider its October 12 order and granted summary judgment in favor of FagelHaber. Construction Systems timely appealed.

¶ 18                              II. Analysis

¶ 19     Construction Systems contends that the trial court erred in granting summary judgment in FagelHaber's favor because FagelHaber's negligence in failing to perfect the mechanic's lien was not "plainly obvious." Construction Systems claims that the statute of limitations did not commence when it paid substitute counsel to attempt to avoid the effect of FagelHaber's error in perfecting its mechanic's lien, but when Construction Systems and FBOP settled the lien priority issue on December 12, 2007, or, alternatively, on August 29, 2007, when the trial court ruled on Construction Systems' and FBOP's cross-motions for summary judgment.

¶ 20     Section 13-214.3(b) of the Code of Civil Procedure (735 ILCS 5/13-214.3(b) (West 2012)), provides for a two-year statute of limitations for legal malpractice actions beginning "from the time the person bringing the action knew or *reasonably should have known* of the injury for which damages are sought." (Emphasis added.) Thus, the legal malpractice statute of limitations incorporates the " 'discovery rule,' " which triggers the start of the limitations period at the point in time when the plaintiff knows or reasonably should know of his or her injury. *American Family Mutual Insurance Co. v. Krop*, 2018 IL 122556, ¶ 21; *Snyder v. Heidelberger*, 2011 IL 111052, ¶ 10; *Brummel v. Grossman*, 2018 IL App (1st) 162540, ¶ 26. Generally, a

plaintiff does not sustain an injury until he or she has suffered an adverse judgment, settlement, or dismissal in the underlying action. *Nelson*, 2016 IL App (1st) 160571, ¶ 13. But a malpractice action may accrue before the trial court enters an adverse judgment if it is " 'plainly obvious' " that the plaintiff " 'has been injured as the result of professional negligence or where an attorney's neglect is a direct cause of the legal expense incurred by the plaintiff.' " *Id.* ¶ 14 (quoting *Estate of Bass v. Katten*, 375 Ill. App 3d 62, 70 (2007)). When a plaintiff should have discovered an injury usually raises a question of fact but determining when the limitations period commences can be decided as a matter of law if the facts are undisputed and only one answer is reasonable. *American Family Mutual Insurance Co.*, 2018 IL 122556, ¶ 21.

¶ 21     Summary judgment should be granted "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2012). When deciding a motion for summary judgment, a trial court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the nonmovant. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). Summary judgment should not be granted "where the material facts are disputed or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." *Id.* We review the trial court's grant of summary judgment *de novo*. *Id.*

¶ 22     Here, summary judgment is proper if the undisputed facts allow for only one conclusion: that more than two years elapsed between the time Construction Systems knew or should have known of its injury and January 27, 2009, the date that it filed its legal malpractice action. See *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 250 (1994). If the undisputed facts establish that Construction Systems should have discovered FagelHaber's error in perfecting its mechanic's lien as early as March 21, 2005 (invoice date for services rendered in

January and February 2005), and Construction Systems paid Berres for those services relating to FagelHaber's error, then the statute of limitations commenced at that time and not at the later time when the parties settled the underlying litigation or when the trial court ruled on the underlying cross-motions for summary judgment.

¶ 23    Construction Systems takes the position that the point in time when it became *aware* of FagelHaber's failure to give notice was of no consequence, because it could only have obtained the requisite *knowledge* of a defect in the lien when FBOP filed its 2007 motion for summary judgment raising the lack of notice to Cosmopolitan. Essentially, Construction Systems claims that there can be no actual knowledge of a defect unless and until the defect is raised as a defense.

¶ 24    Construction Systems' contention that it could not have known about the defect in its mechanic's lien and, hence, FagelHaber's negligence until FBOP raised it as a defense misses the mark. Importantly, actual knowledge of FagelHaber's negligence was not required under the discovery rule incorporated in section 24; rather, the limitations period was triggered when Construction Systems had a reasonable belief that its injury was caused by FagelHaber's negligence. *Nelson*, 2016 IL App (1st) 160571, ¶ 12. Indeed, the relevant inquiry is not when Construction Systems knew or should have known about the lack of notice as an actual *defense*, but when Construction Systems should have discovered FagelHaber's failure to serve statutory notice of the mechanic's lien on Cosmopolitan prompting it to further investigate FagelHaber's performance. See *id.* Importantly, Berres's February 10, 2005, letter asked for FagelHaber's cooperation in addressing the "problematic situation" regarding priority of Construction Systems' mechanic's lien due to the failure to send notice to Cosmopolitan. The only reasonable conclusion from that letter was that Berres, an experienced mechanic's lien attorney, knew of FagelHaber's error in perfecting Construction Systems' mechanic's lien. Moreover, Berres

acknowledged that a failure to provide the required notice of a mechanic's lien would be fatal. Faced with the belief that Construction Systems' mechanic's lien may not have been properly perfected, Berres developed alternative theories to protect Construction Systems' interests. Construction Systems filed the amended pleadings incorporating the alternative bases for lien priority in 2005. Consequently, no genuine issue of material fact exists as to when Construction Systems discovered FagelHaber's negligence because the record clearly establishes that Construction Systems discovered the defect in its mechanic's lien as early as March 21, 2005— the invoice date incorporating Berres's legal services rendered in February and March 2005.

¶ 25        Construction Systems' discovery of FagelHaber's error does not end our analysis, for we must still determine when Construction Systems was injured given that damages are an essential element of a legal malpractice claim. See *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 306 (2005); *York Woods Community Ass'n v. O'Brien*, 353 Ill. App. 3d 293, 298 (2004); *Palmros v. Barcelona*, 284 Ill. App. 3d 642, 646 (1996). Payment of attorney fees is a monetary loss sufficient to constitute damages if the additional fees are directly attributable to former counsel's neglect. *Nelson*, 2016 IL App (1st) 160571, ¶ 14; *Palmros*, 284 Ill. App. 3d at 647; *Goran v. Glieberman*, 276 Ill. App. 3d 590, 595 (1995). It is undisputed that in 2005 Berres billed and Construction Systems paid for the services Berres rendered in preparing the February 2005 letter and amending the pleadings. Construction Systems' payment of the additional legal fees constituted actual damages and, coupled with its knowledge of FagelHaber's negligence, commenced the running of the statute of limitations at that time. See *Nelson*, 2016 IL App (1st) 160571, ¶¶ 14, 16; *Palmros*, 284 Ill. App. 3d at 647; *Goran*, 276 Ill. App. 3d at 595. And it is clear that the additional fees Construction Systems paid for Berres' services were directly attributable to FagelHaber's neglect. See *Lucey v. Law Offices of Pretzel & Stouffer, Chtrd.*, 301 Ill. App. 3d 349, 355 (1998). In other words, had FagelHaber

properly perfected Construction Systems' mechanic's lien by serving notice on Cosmopolitan, there would have been no need for Berres to develop alternative arguments to attempt to preserve the priority of the lien. Consequently, Construction Systems sustained damages when it paid Berres attorney fees for her services, which occurred in 2005, more than two years before it filed its legal malpractice action on January 27, 2009.

¶ 26    Raising policy concerns, Construction Systems claims that the statute of limitations could not have run in March 2007, because the underlying mechanic's lien litigation was still pending at that time. Construction Systems argues that had it filed its legal malpractice action before the underlying case settled in December 2007, or, at the earliest, when the trial court denied the underlying cross-motions for summary judgment in August 2007, then its action would have been nothing more than a prohibited "provisional" or "prophylactic" malpractice action.

¶ 27    Construction Systems relies on *Jackson Jordan*, 158 Ill. 2d 240, *Warnock v. Karm Winand & Patterson*, 376 Ill. App. 3d 364 (2007), and *York Woods Community Ass'n*, 353 Ill. App. 3d 293, all of which reiterated the admonishment against provisional or prophylactic legal malpractice cases. But these cases all have the common thread that the attorney's negligence could not have reasonably been discovered before the trial court entered an adverse judgment. See *Jackson Jordan*, 158 Ill. 2d at 250-51 (plaintiff may not have known about his injury until the court entered the first adverse ruling in the underlying case); *York Woods Community Ass'n*, 353 Ill. App. 3d at 299 (counsel's potential malpractice was unknown and it was unclear whether the additional attorney's fees incurred were attributable to any legal malpractice); *Warnock*, 376 Ill. App. 3d at 370 (entry of an adverse judgment marked the date on which the statute of limitations commenced because the plaintiff did not actually discover and reasonably could not have discovered counsel's negligence until the trial court entered judgment on the pleadings in the underlying case in favor of that plaintiff). Unlike those cases, an adverse judgment was not

necessary for Construction Systems to discover FagelHaber's negligence because the negligence was obvious in 2005 when substitute counsel discovered the defect in the lien and began researching and developing alternative theories regarding its unperfected mechanic's lien.

¶ 28    We find *Nelson*, 2016 IL App (1st) 160571, ¶ 22, dispositive. The attorney in *Nelson* negotiated an employment agreement on the plaintiff's behalf, which stipulated a loss of salary and commission on termination for cause. *Id.* ¶ 15. After the plaintiff was later terminated for cause, the plaintiff brought a malpractice action against his former attorney and the law firm for failing to negotiate an employment contract that was in the plaintiff's best interests. *Id.* ¶¶ 4, 7. This court held that an adverse judgment was not necessary for the plaintiff to discover that he was injured by his former attorney's negligence because the plaintiff should have known of his injury upon termination or when he hired counsel to bring an action against his employer based on his termination and provisions of the employment agreement negotiated by his former attorney. *Id.* ¶ 16. The same holds true here. See also *Goran*, 276 Ill. App. 3d at 595 (legal malpractice action commenced when the plaintiff paid substitute counsel to redo the briefs prepared by former counsel that were stricken for technical defects).

¶ 29    Like *Nelson*, it was obvious that FagelHaber's failure to serve the required statutory notice on Cosmopolitan caused an injury to Construction Systems when Berres learned of the negligence and Construction System paid for her services rendered to minimize FagelHaber's negligence—long before 2007.

¶ 30    Moreover, contrary to Construction Systems' claim, its malpractice action would not have been premature had it filed the action while the underlying case was still pending because the malpractice action did not depend on the outcome of the underlying case. As stated, Construction Systems sustained damages in 2005 when it paid additional legal fees that were directly attributable to FagelHaber's failure to serve Cosmopolitan with the required notice.

Consequently, the existence of Construction Systems' damages were certain and not speculative at that point in time. See *Nelson*, 2016 IL App (1st) 160571, ¶¶ 21, 24.

¶ 31    Construction Systems' claim that damages were unknown until the underlying lien litigation was settled and Construction Systems sustained a loss of $1,321,200 focuses the amount, not the existence of damages. *Northern Illinois Emergency Physicians*, 216 Ill. 2d at 307 (damages are not considered speculative if their existence is certain, but the amount is uncertain or yet to be fully determined). Likewise, Construction Systems' contention that it could not file a malpractice action claiming that notice to Cosmopolitan was required but argue the opposite in the underlying action that notice was not required is beside the point. Construction Systems' claim against FagelHaber was ripe when it discovered that the required notice was not served and incurred additional legal fees in an attempt to rectify the error. Armed with that knowledge in 2005, Construction Systems did nothing until 2009 to alert FagelHaber of its malpractice claim, even though the possibility of staying the malpractice proceedings pending resolution of the underlying lien litigation existed. See *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 32 (recognizing that a plaintiff may request a stay in a legal malpractice action pending resolution of the underlying litigation).

¶ 32    Furthermore, it is not uncommon in the context of legal malpractice actions for the parties to enter into an agreement that tolls the statute of limitations pending the outcome of the underlying litigation. See *Kadlec v. Sumner*, 2013 IL App (1st) 122802, ¶ 11. This would have avoided the need for Construction Systems to take inconsistent positions regarding the priority of its lien while postponing suit against FagelHaber until the full extent of its damages was known.

¶ 33    To comply with the two-year statute of limitations for legal malpractice actions, Construction Systems was required to file its legal malpractice action by March 2007 (two years from the March 2005 invoice date), but Construction Systems filed its legal malpractice action

on January 27, 2009, far outside the limitations period. Consequently, Construction Systems' legal malpractice action was untimely, and the trial court properly granted summary judgment in FagelHaber's favor.

¶ 34     For the foregoing reasons, we affirm the trial court's grant of summary judgment in FagelHaber's favor.[2]

¶ 35     Affirmed.

---

[2]Based on our conclusion that the trial court properly granted summary judgment in FagelHaber's favor, we need not consider FagelHaber's alternative basis to affirm that Construction Systems cannot prove that failure to serve notice on Cosmopolitan was the proximate cause of the $1,825,000 loss Construction Systems sustained in settling the lien dispute with FBOP.