# NORTHERN ILLINOIS EMERGENCY PHYSICIANS *et al.*, Appellees, v. LANDAU, OMAHANA & KOPKA, LTD., *et al.*, Appellants.

*Opinion filed September 22, 2005. — Rehearing denied November 28, 2005.*

Samuel B. Isaacson, Sonya D. Naar and Denise C. Castillo, of DLA Piper Rudnick Gray Cary US, L.L.P., of Chicago, for appellants Landau, Omahana & Kopka, Ltd., and Robert A. Bower.

Michael C. Bruck, Jean M. Prendergast and Ellen M. Carey, of Crisham & Kubes, Ltd., of Chicago, for appellants DiMonte, Schostok & Lizak and Stephen J. Schostok.

Thomas R. Rakowski and Robert A. Egan, both of Chicago, for appellee Northern Illinois Emergency Physicians.

JUSTICE KARMEIER delivered the opinion of the court:

Plaintiff, Northern Illinois Emergency Physicians (NIEP), brought an action in the circuit court of Cook

County against the law firms of Landau, Omahana & Kopka, Ltd., and DiMonte, Schostok & Lizak, and two of the firms' attorneys alleging that the law firms had committed legal malpractice while representing NIEP in connection with a medical malpractice claim. The circuit court granted summary judgment in favor of the law firms and their attorneys and against NIEP on the grounds that NIEP had sustained no damages as a matter of law and therefore could not establish a necessary element for a cause of action for legal malpractice. The appellate court reversed and remanded. No. 1—02—1218 (unpublished order under Supreme Court Rule 23). The law firms and their attorneys then petitioned our court for leave to appeal. 177 Ill. 2d R. 315. We granted their petitions and consolidated the cases. For the reasons that follow, the cause of action against attorney Stephen J. Schostok is dismissed. As to all of the remaining attorneys, the judgment of the appellate court is reversed.

The events giving rise to these proceedings began 15 years ago, when Erica Johnson, a 22-month-old child, fell ill and was taken by her parents to the emergency room at St. Therese Medical Center in Waukegan. Erica was treated at the hospital by Dr. Bruce Sands, a partner in NIEP. Erica's symptoms included high fever, an elevated respiratory rate, a red rash, and a purple mark on the back of her neck and shoulder. Dr. Sands believed, erroneously, that Erica's symptoms were attributable to an ear infection and child abuse. He did not think the child was in any imminent danger. He therefore discharged her from the hospital and sent her home with her family, a syringe of antibiotics, and a prescription for more antibiotics.

In fact, Erica did not have an ear infection and was not the victim of child abuse. She was actually in shock and suffering from petechiae, purpura, and a bacterial infection known as meningococcemia. Her condition was

life threatening, but could have been treated successfully had it been properly diagnosed. Because Dr. Sands failed to recognize her symptoms for what they were, however, Erica did not receive the care she required. Within 11 hours of her discharge from St. Therese, Erica lapsed into a coma. Her parents took her to the emergency room of another hospital, but it was too late. Efforts at emergency resuscitation failed, and she was pronounced dead.

Erica's parents, as special administrators of Erica's estate, subsequently filed a medical malpractice action in the circuit court of Lake County against Dr. Sands, NIEP, and St. Therese Medical Center. St. Therese, in turn, filed a third-party claim for common law implied indemnity against Dr. Sands and NIEP based on vicarious liability.[1] Following a jury trial, judgment was entered in favor of Erica's parents and against all defendants in the amount of $4 million. On St. Therese's motion, the trial court then directed a verdict against Dr. Sands and NIEP and in favor of St. Therese on the medical center's indemnity claim.

St. Therese, Dr. Sands and NIEP all appealed, arguing that they should not have been held liable, that they were entitled to a new trial based on various errors committed by the trial judge, and that the jury's damage award was not supported by the evidence and was excessive. Dr. Sands further argued that the trial court should not have directed a verdict in favor of St. Therese on its claim for indemnity because that claim was filed beyond a deadline set by the circuit court and was barred by the applicable statutes of limitation and repose. The appel-

---

[1]For a discussion of the continued viability of implied indemnity claims following enactment of the Joint Tortfeasor Contribution Act (740 ILCS 100/0.01 *et seq.* (West 1994)), see *American National Bank & Trust Co. v. Columbus-Cuneo-Cabrini Medical Center*, 154 Ill. 2d 347 (1992).

late court rejected these arguments and affirmed. *Johnson v. Sands*, Nos. 2—96—1479, 2—96—1480 cons. (1997) (unpublished order under Supreme Court Rule 23).

The appellate court's order affirming the circuit court's judgment was filed November 19, 1997. While that appeal was pending, Erica's parents initiated post-judgment collection proceedings against Sands and all but one of the other partners of NIEP. Sands filed for personal bankruptcy. The other partners named in the proceedings argued that their personal assets could not be reached because they had not been sued individually and the circuit court's judgment named only the partnership, not the individual partners. Although the circuit court rejected these arguments, the appellate court found them to be meritorious. It therefore reversed various orders entered by the circuit court holding NIEP's partners in contempt for failing to cooperate in the proceedings to discover their assets and requiring them to turn over their assets to Erica's parents. See *Johnson v. St. Therese Medical Center*, 296 Ill. App. 3d 341 (1998).

Shortly before the appellate court filed its opinion in the collection case, St. Therese satisfied the judgment by paying Erica's parents the full $4 million awarded to them. Erica's parents acknowledged that payment by executing a release of the judgment as to St. Therese on April 20, 1998. With that payment and the accompanying release, the involvement of Erica's parents in this litigation ended. The litigation itself did not.

When Dr. Sands treated Erica at St. Therese Medical Center, both he and NIEP were covered by professional liability insurance policies issued by Premier Alliance Insurance Company. Premier became insolvent in 1994, while the action filed by Erica's parents was still pending, and its obligations were assumed by the Illinois Insurance Guaranty Fund (the Fund) in accordance with

section 532 *et seq.* of the Illinois Insurance Code (215 ILCS 5/532 *et seq.* (West 1994)). After judgment was entered in favor of Erica's parents and against Dr. Sands, NIEP, and St. Therese, the Fund brought a declaratory judgment action in the circuit court of Cook County to obtain a determination as to its statutory obligation to indemnify Dr. Sands and NIEP. The circuit court ultimately determined that the Fund was required to indemnify Dr. Sands and NIEP for $300,000 each, the maximum authorized by the statute, making the Fund's total liability $600,000. That judgment was affirmed on appeal. *Illinois Insurance Guaranty Fund v. Sands*, Nos. 1—98—2798, 1—98—2803 cons. (1999) (unpublished order under Supreme Court Rule 23).

While the Fund was litigating its statutory liability to Sands and NIEP, the partners who comprised NIEP, including Sands, brought a separate action for legal malpractice, individually and on behalf of the partnership, against the lawyers who had represented Sands and NIEP in the underlying medical malpractice case. That action, which gave rise to the present appeal, named as defendants the law firm of Landau, Omahana & Kopka, Ltd.; Robert A. Bower, a lawyer then associated with Landau, Omahana & Kopka, Ltd.;[2] the law firm of Di-Monte, Schostok & Lizak; and Stephen Schostok, an attorney with DiMonte, Schostok & Lizak.[3]

According to the complaint, Bower and the firm of

---

[2]Public records maintained by the Attorney Registration and Disciplinary Commission (ARDC) show that Bower left Landau, Omahana & Kopka and is now a member of the firm Tucker, Bower, Rubin & Merker, LLP.

[3]ARDC records disclose that Stephen J. Schostok is now deceased. Actions for professional malpractice do not abate with the death of a defendant attorney. See *Beastall v. Madson*, 235 Ill. App. 3d 95, 99 (1992); *McGill v. Lazzaro*, 62 Ill. App. 3d 151, 154 (1978). Another party may be substituted for the decedent by order of court upon motion for purposes of defending the action. See 735

Landau, Omahana & Kopka, Ltd., were hired by the Fund to represent Sands and NIEP in the medical malpractice case. Sands and NIEP, in turn, hired Schostok and the firm of DiMonte, Schostok & Lizak to represent them as additional counsel in that case. The NIEP partners claimed that they had meritorious defenses to the third-party indemnity action asserted against them by St. Therese Medical Center, specifically, that the indemnity claim was barred by the applicable periods of limitation and repose. According to the NIEP partners, however, the defendant lawyers neither moved for dismissal of the third-party complaint nor raised, as an affirmative defense, that the complaint was time-barred. The NIEP partners asserted that these omissions constituted a failure "to exercise reasonable care, skill and diligence" required by the attorneys' professional obligations and damaged NIEP and its partners by allowing judgment to be entered against them on St. Therese's third-party claim. Accordingly, the NIEP partners sought recovery from the attorneys for $4 million, the full amount of the third-party judgment, plus interest.

NIEP's action for legal malpractice triggered a separate action by Landau, Omahana & Kopka, Ltd., against St. Therese Medical Center. In its complaint, as amended, Landau, Omahana alleged that St. Therese had asserted its third-party complaint against NIEP and its partners merely to force the Fund, NIEP's insurer, to settle the case for a higher amount. According to Landau, Omahana, St. Therese had agreed, orally, that if it were successful in obtaining judgment on its third-party claim, it would not enforce that judgment against NIEP and its

---

ILCS 5/2—1008(b) (West 2004); 155 Ill. 2d R. 366(a)(2). The record before us gives no indication that a motion to substitute has ever been filed. The action shall therefore be dismissed as to Schostok. 735 ILCS 5/2—1008(b) (West 2004). It shall proceed with respect to the remaining parties.

partners. Landau, Omahana's action sought to hold St. Therese to that oral promise.

Landau, Omahana's amended complaint was ultimately dismissed by the circuit court. The appellate court affirmed, holding that the law firm was neither a party to nor a third-party beneficiary of any agreement that may have been reached between St. Therese and the NIEP partners and therefore had no standing to enforce it. *Landau, Omahana & Kopka, Ltd. v. Franciscan Sisters Health Care Corp.*, 323 Ill. App. 3d 487, 494 (2001). The question of whether an agreement not to enforce the indemnity judgment actually existed was not resolved.

As the Landau, Omahana litigation ran its unsuccessful course, the legal malpractice action filed by Sands and the other NIEP partners against Landau, Omahana; Robert Bower; DiMonte, Schostok & Lizak; and Stephen Schostok proceeded. The defendants in the malpractice action filed a combined motion to dismiss. That motion was granted as to Sands and the other individual partners of NIEP in May of 1999, leaving only the claims asserted by the NIEP partnership itself.

In July of 2001, more than three years after the legal malpractice lawsuit commenced, two separate motions for summary judgment were filed, one by Landau, Omahana and Robert Bower, the second by DiMonte, Schostok & Lizak and Stephen Schostok. The Landau, Omahana motion asserted that it and Bower were entitled to judgment because NIEP had improperly assigned its malpractice claim to St. Therese. The motion further asserted that NIEP's malpractice claim could not be sustained, as a matter of law, because the partnership sustained no actual damages.

DiMonte, Schostok & Lizak's motion for summary judgment made the same arguments. In addition, it asserted that the firm breached no duty to NIEP or its

partners because it did not actually serve as trial counsel for the partnership and played no role in the decision not to challenge St. Therese's indemnification claim as untimely. According to DiMonte, Schostok & Lizak, it was retained simply to negotiate with the Fund on behalf of the partnership and protect the partnership's assets in the underlying medical malpractice action.

Both summary judgment motions were subsequently supplemented by the defendant attorneys. NIEP filed written responses to the motions. Landau, Omahana and Robert Bower, in turn, filed their own response to a motion for summary judgment that had been filed by NIEP a year earlier, but which remained pending.

Following a hearing, all of the pending summary judgment motions were denied. The law firms and attorneys moved for reconsideration. Following another hearing, their motions were granted. In an order filed February 13, 2002, the circuit court reversed its position and entered summary judgment in favor of the law firms and attorneys and against NIEP. That decision was founded on the fact NIEP had never had to pay St. Therese and St. Therese had never attempted to collect the indemnity judgment. Because NIEP had paid nothing to St. Therese, the court reasoned that the attorneys' alleged malpractice could not be said to have caused any actual damage to the partnership. Without such actual damages, the court believed, no action for legal malpractice could lie.

NIEP moved for reconsideration. That motion was denied. NIEP then appealed, and the appellate court reversed and remanded for further proceedings. Rejecting the view taken by the circuit court, the appellate court held that payment of the indemnity judgment was not a prerequisite to NIEP's legal malpractice action. In the appellate court's view, the fact that the indemnity judgment had been entered and remained outstanding

"could constitute proof of actual damages as a result of [the lawyers'] alleged negligence, absent any evidence to the contrary" and raised a genuine issue of material fact, precluding summary judgment on the legal malpractice claim. No. 1—02—1218 (unpublished order under Supreme Court Rule 23).

The appellate court further held that NIEP's negligence claim could not be barred on the grounds that it was part of an impermissible scheme to assign a malpractice claim in violation of Illinois law. In addition, the court rejected an argument advanced by DiMonte, Schostok & Lizak and Stephen Schostok that NIEP's action is premature. The court likewise found no merit to the lawyers' alternative claim that DiMonte, Schostok & Lizak was not responsible for NIEP's damages, as a matter of law, because NIEP had not retained the firm as trial counsel and it had no authority to control the litigation with respect to St. Therese's indemnity claim. Citing deposition testimony from Dr. Sands that refuted the lawyers' characterization of their role in the case, the appellate court held that there was a genuine issue of material fact regarding the scope of Schostok's responsibility. No. 1—02—1218 (unpublished order under Supreme Court Rule 23).

Landau, Omahana and Robert Bower petitioned for leave to appeal. A separate petition for leave to appeal was filed by DiMonte, Schostok & Lizak and Stephen Schostok. We granted both petitions and, on a joint motion filed by the attorneys, consolidated the cases for briefing, argument and a decision on the merits.

On this appeal, the lawyers assert that the appellate court's judgment should be reversed for two reasons: (1) the circuit court correctly held that NIEP had not sustained any actual damages as a result of the attorneys' alleged negligence and therefore could not assert a claim against them for legal malpractice; and (2) if the appel-

late court's decision is allowed to stand and NIEP subsequently prevails against the lawyers on the merits, any recovery obtained by NIEP would contravene public policy because, if the damage award were retained by NIEP, the partnership would obtain a windfall and be unjustly enriched. Alternatively, if NIEP handed the award over to St. Therese, the partnership would violate the prohibition against the assignment of malpractice claims.

Where, as here, an appeal arises from the reversal of a circuit court's order granting summary judgment, our standard of review is *de novo. Home Insurance Co. v. Cincinnati Insurance Co.,* 213 Ill. 2d 307, 315 (2004). In undertaking such review, our function is to determine whether the court reached the proper result. The reasons given by the court for its decision or the findings on which its decision is based are not material if the judgment is correct. *City of Chicago v. Holland,* 206 Ill. 2d 480, 491-92 (2003). Accordingly, we may affirm a grant of summary judgment on any basis appearing in the record, regardless of whether the lower courts relied upon that ground. *Home Insurance Co.,* 213 Ill. 2d at 315.

The standards governing summary judgment motions are well established. The purpose of summary judgment is not to try a question of fact, but to determine whether a genuine issue of material fact exists. *Adams v. Northern Illinois Gas Co.,* 211 Ill. 2d 32, 42-43 (2004). Summary judgment is proper where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *General Casualty Insurance Co. v. Lacey,* 199 Ill. 2d 281, 284 (2002).

Because summary judgment is a drastic means of disposing of litigation, a court must exercise extraordi-

nary diligence in reviewing the record so as not to preempt a party's right to fully present the factual basis for its claim. See *Sullivan's Wholesale Drug Co. v. Faryl's Pharmacy, Inc.*, 214 Ill. App. 3d 1073, 1077 (1991). At the summary judgment stage, plaintiffs are not required to prove their cases. *Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority*, 172 Ill. 2d 243, 256 (1996). Although summary judgment is appropriate if a plaintiff cannot establish an element of his claim (*Morris v. Margulis*, 197 Ill. 2d 28, 35 (2001)), it should only be granted when the right of the moving party is clear and free from doubt (*Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 483 (1998)).

In the matter before us today, NIEP's action against the defendant lawyers alleges legal malpractice. To prevail on a legal malpractice claim, the plaintiff client must plead and prove that the defendant attorneys owed the client a duty of due care arising from the attorney-client relationship, that the defendants breached that duty, and that as a proximate result, the client suffered injury. *Sexton v. Smith*, 112 Ill. 2d 187, 193 (1986).

The injury in a legal malpractice action is not a personal injury (*Eastman v. Messner*, 188 Ill. 2d 404, 411 (1999)), nor is it the attorney's negligent act itself (*Palmros v. Barcelona*, 284 Ill. App. 3d 642, 646 (1996)). Rather, it is a pecuniary injury to an intangible property interest caused by the lawyer's negligent act or omission. See *Eastman*, 188 Ill. 2d at 411; *Palmros v. Barcelona*, 284 Ill. App. 3d at 646. For purposes of a legal malpractice action, a client is not considered to be injured unless and until he has suffered a loss for which he may seek monetary damages. See *Griffin v. Goldenhersh*, 323 Ill. App. 3d 398, 407 (2001). The fact that the attorney may have breached his duty of care is not, in itself, sufficient to sustain the client's cause of action. Even if negligence on the part of the attorney is established, no action will

lie against the attorney unless that negligence proximately caused damage to the client. See *Metrick v. Chatz*, 266 Ill. App. 3d 649, 654 (1994). The existence of actual damages is therefore essential to a viable cause of action for legal malpractice. See *Palmros v. Barcelona*, 284 Ill. App. 3d 642, 646 (1996).

In a legal malpractice action, actual damages are never presumed. See *Griffin*, 323 Ill. App. 3d at 404. Such damages must be affirmatively established by the aggrieved client. *Eastman*, 188 Ill. 2d at 411. Unless the client can demonstrate that he has sustained a monetary loss as the result of some negligent act on the lawyer's part, his cause of action cannot succeed. See *Farm Credit Bank of St. Louis v. Gamble*, 197 Ill. App. 3d 101, 103 (1990).

Making that demonstration requires more than supposition or conjecture. Where the mere possibility of harm exists or damages are otherwise speculative, actual damages are absent and no cause of action for malpractice yet exists. See *Lucey v. Law Offices of Pretzel & Stouffer, Chtrd.*, 301 Ill. App. 3d 349, 353 (1998). Damages are considered to be speculative, however, only if their existence itself is uncertain, not if the amount is uncertain or yet to be fully determined. *Profit Management Development, Inc. v. Jacobson, Brandvik & Anderson, Ltd.*, 309 Ill. App. 3d 289, 309 (1999).

Our appellate court has held that where an attorney has been engaged to defend an action and the action is lost through the attorney's negligence, the amount of the judgment suffered by the client is, generally, a proper element of recovery in a malpractice proceeding against the attorney. See *Gruse v. Belline*, 138 Ill. App. 3d 689, 698 (1985). Based on that precedent, NIEP asserts that the $4 million judgment entered against it on St. Therese's indemnity claim is sufficient to satisfy the damage requirement for its malpractice claim against the

defendant lawyers. Although NIEP has never been asked to pay that judgment and St. Therese has never attempted to enforce it, NIEP contends that under *Gruse*, an adverse judgment can constitute evidence of actual damage even when the judgment remains unpaid at the time the malpractice claim is tried. See *Gruse*, 138 Ill. App. 3d at 698.

The defendant attorneys oppose that position, arguing that the indemnity judgment itself is not sufficient to establish NIEP's damages. In their view, the partnership's damages must be measured by the amount the partnership actually paid toward satisfaction of the judgment. As we have already indicated, that amount is zero. NIEP has paid nothing to St. Therese and St. Therese has never attempted to collect on the judgment. The defendant attorneys argue, moreover, that because NIEP transferred all of its significant assets to a successor partnership and had been reduced to an empty shell by the time the indemnity judgment was entered, any future attempt to enforce that judgment would have no adverse consequences for the partnership. As a practical matter, it is now judgment proof.

In support of their position, the defendant attorneys look to our appellate court's decision in *Sterling Radio Stations, Inc. v. Weinstine*, 328 Ill. App. 3d 58 (2002). That case involved a legal malpractice action in which the plaintiff sought damages from attorneys he had hired to defend him in an action seeking payment on a promissory note the plaintiff had guaranteed. After judgment was entered against the plaintiff on the guarantee, plaintiff hired new lawyers to appeal the judgment at a cost of $100,000. The appeal was unsuccessful, but a settlement agreement was ultimately reached under which the plaintiff's liability was extinguished through payments made on his behalf by another party. As a result of that agreement, the plaintiff was not required

to pay any part of the judgment out of his own pocket. The $100,000 in attorney fees he incurred in his unsuccessful appeal did, however, remain his responsibility.

The defendant attorneys in the malpractice action moved for summary judgment arguing, among other things, that because the plaintiff had paid nothing himself toward the underlying judgment, he could not be said to have suffered any damages and therefore did not have a legally cognizable claim against the attorneys for malpractice. The circuit court agreed and granted summary judgment in the attorneys' favor. The appellate court reversed in part, holding that the $100,000 in attorney fees paid by plaintiff in his unsuccessful bid, on appeal, to avoid the consequences of the defendant attorneys' actions should be considered damages. With respect to the monies paid in satisfaction of the underlying judgment, however, the appellate court agreed with the circuit court that because those sums had been paid by another party and not the plaintiff personally, the plaintiff could not claim them as damages. To hold otherwise, the appellate court reasoned, would unjustly enrich the plaintiff, permit him to obtain a double recovery, and place him in a better position by bringing the malpractice action than he would have occupied had he prevailed in the underlying action. *Sterling Radio Stations*, 328 Ill. App. 3d at 65.

In the case before us here, the appellate court found *Sterling Radio Stations* to be inapposite because, unlike *Gruse*, *Sterling* did not speak to the issue of whether unsatisfied judgments can constitute actual damages in legal malpractice actions. Rather, it addressed the separate question of whether benefits received by an injured party from a source independent of and collateral to the torfeasor will diminish the damages the injured party could otherwise recover from the tortfeasor. That question is not at issue here, the appellate court held, for

no payments have been made toward the judgment by a third party. The $4 million indemnity judgment obtained by St. Therese against NIEP has not been satisfied and remains outstanding. No. 1—02—1218 (unpublished order under Supreme Court Rule 23).

The defendant attorneys in this case argue that the appellate court misinterpreted and misapplied both *Sterling Radio Stations* and *Gruse*. They also assert that the appellate court failed to properly apply the standards for summary judgment. Specifically, they contend that because the materials they adduced in support of their motion showed that NIEP had not been compelled to pay the indemnity judgment and was unlikely to ever actually pay that judgment, the burden should have shifted to NIEP to produce some factual basis to show that it suffered pecuniary injury and was entitled to judgment in its favor. According to the attorneys, that did not happen. The appellate court permitted NIEP's action to proceed based on nothing more than the existence of the adverse indemnity judgment. In the attorneys' view, that was improper.

We agree with the defendant attorneys that the appellate court erred in reversing the circuit court's order granting summary judgment and allowing NIEP's malpractice claim to go forward. In our view, however, the flaw in the appellate court's judgment is not related to shifting burdens of production, nor does it turn on whether the existence of an unsatisfied judgment is sufficient, in and of itself, to withstand a challenge to the damages element of a legal malpractice claim on a motion for summary judgment. The problem with the appellate court's disposition is that it fails to take into account the actual effect of the indemnity judgment under the facts of this case.

St. Therese's third-party indemnity action did not create the $4 million damage claim NIEP is presently

facing. NIEP is responsible for those damages because of the medical malpractice committed by Bruce Sands, one of its partners. NIEP became responsible for those damages after the jury found it liable for the acts and omissions by Dr. Sands which resulted in Erica Johnson's death. Pursuant to the jury's verdict, on which the circuit court entered judgment, NIEP was jointly and severally liable for all damages awarded to Erica's parents. Because NIEP was jointly and severally liable, Erica's parents could have sought full satisfaction of the judgment from NIEP alone. See *Prince v. Atchison, Topeka & Santa Fe Ry. Co.*, 76 Ill. App. 3d 898, 909 (1979). In other words, Erica's parents could have proceeded against NIEP directly for the entire $4 million judgment.

Because NIEP was already liable for the entire $4 million judgment, entry of the indemnity judgment against it on St. Therese's third-party action did not impose any greater burden on the partnership than it already faced. The indemnity judgment's only effect was to change the party to whom the $4 million was owed. When judgment was entered on the underlying medical malpractice action, NIEP was liable to Erica's parents. When judgment was entered on St. Therese's indemnity claim and St. Therese satisfied the malpractice judgment, NIEP's liability shifted to St. Therese. In each case, however, the amount NIEP owed remained exactly the same. The acts or omissions of NIEP's lawyers in defending against the indemnity claim therefore did not place NIEP in any worse position than it was already in. That being so, their alleged negligence cannot be said to have proximately caused any injury to the partnership.

When this was pointed out to NIEP's counsel during oral argument, counsel responded by suggesting that the $4 million judgment in the underlying medical malpractice case could not be considered as harming NIEP because Erica's parents would not have looked to anyone

other than St. Therese to collect the judgment. If the medical center had not voluntarily paid the judgment, counsel's theory was that the parents would have attempted to execute the judgment against it (*i.e.*, St. Therese), not the other defendants. For NIEP, the $4 million judgment in the medical malpractice action therefore had no practical effect.

This argument is untenable for several reasons. First, it is not supported by the facts. Contrary to counsel's speculation, St. Therese is not the first and only defendant Erica's parents would have looked towards to enforce the judgment. The record plainly shows that Erica's parents' initial collection efforts were actually directed to the NIEP partners, not St. Therese.

The claim that Erica's parents would never have sought to collect from NIEP is also flawed because it presupposes that proceeding against that entity would have been futile because the partnership had nothing from which the judgment could be satisfied. Clearly, however, St. Therese did not believe that seeking recourse from NIEP was fruitless. That is why it filed and prosecuted an implied indemnity claim. Whatever resources were available to meet St. Therese's claim were equally available to Erica's parents. Accordingly, if St. Therese thought action against NIEP was worthwhile, there is no reason to believe that Erica's parents would not have made the same assumption. Indeed, if Erica's parents had not considered NIEP to be a viable target, they would have had no reason to include it among the parties they named as defendants.

Finally, counsel's argument is inconsistent with the position NIEP is taking with respect to St. Therese's indemnity judgment. If, as NIEP contends, the existence of the indemnity judgment, standing alone, is sufficient to constitute legally cognizable damage even though the judgment has never been enforced against NIEP, it must

also be true that the existence of the underlying malpractice judgment, standing alone, was sufficient to constitute legally cognizable damage prior to its satisfaction by St. Therese even though the judgment was not enforced against NIEP. The situations are parallel. The magnitude of the harm was the same. It therefore cannot be said that one judgment was any more onerous than the other. Correspondingly, entry of the indemnity judgment cannot be said to have made NIEP any worse off than it was when the jury returned the $4 million verdict against it on the underlying medical malpractice claim.

It is true that if NIEP's lawyers had mounted a successful challenge to St. Therese's third-party action, St. Therese could not have obtained indemnity from NIEP. The only circumstance under which the absence of the indemnity judgment would benefit NIEP, however, is if St. Therese were willing to voluntarily pay the full amount of the judgment to Erica's parents before Erica's parents initiated collection proceedings against NIEP directly.[4] Under that scenario, NIEP would be relieved of any further financial responsibility to Erica's parents, for the parents, having once obtained full satisfaction of the judgment, could not look elsewhere to collect it again. As a result, NIEP would evade liability completely.

The problem with this scenario is that it suffers from the same impediment as the argument we just discussed: it has no basis in fact. For St. Therese to voluntarily assume the full burden of the judgment without first see-

---

[4]Obtaining dismissal of the indemnity claim would yield no benefit to NIEP if St. Therese were unwilling to satisfy the judgment prior to the instigation of collection proceedings against NIEP by Erica's parents because defending against the parents' collection action would entail the same burdens and subject NIEP to the same amount of damages as St. Therese's indemnity action would have. NIEP's position would be unchanged. Again, from NIEP's perspective, the only difference would be the identity of the party pursuing collection of the judgment.

ing whether Erica's parents would look elsewhere to satisfy the judgment would be contrary to the medical center's own financial interests and inconsistent with its view of who was ultimately responsible for Erica Johnson's death. St. Therese certainly did nothing like that here. It made no payments until after collection proceedings against the NIEP partners had reached the appellate court. There is nothing in reason or the record to suggest that it would have acted any differently had its indemnity action against NIEP been successfully challenged. To postulate damages based on this sequence of events would therefore be entirely hypothetical. That is fatal to NIEP's position, for as we noted earlier in this opinion, a cause of action for malpractice cannot be sustained where the mere possibility of harm exists or the damages are otherwise speculative.

Under these circumstances, NIEP has no grounds for claiming that the defendant attorneys' failure to challenge the timeliness of St. Therese's indemnity action had adverse consequences for the partnership. Even if the attorneys had succeeded in defeating the indemnity claim as time-barred, NIEP's situation would be unchanged. It would still have been liable for $4 million in damages. The only difference, as we have already noted, is that it would have owed those damages directly to Erica's parents rather than to St. Therese. A mere change in the identity of the judgment creditor, without more, entails no quantifiable damages. It is therefore insufficient to meet the requirement of actual damages necessary to sustain a cause of action for legal malpractice. Accordingly, the circuit court was correct in granting the motion for summary judgment filed by the defendant attorneys in this case. Its judgment should not have been overturned by the appellate court. In light of this conclusion, we need not reach the attorneys' additional argument that allowing NIEP to recover on its legal malpractice claim would contravene public policy.

For the foregoing reasons, the judgment of the circuit court is affirmed and the judgment of the appellate court is reversed. As to defendant Stephen J. Schostok, who is now deceased, NIEP's cause of action is dismissed.

*Circuit court judgment affirmed;*
*appellate court judgment reversed;*
*cause dismissed in part.*