FIFTH DIVISION
SEPTEMBER 7, 2007


1-06-0341

TODD E. WARNOCK and                              )    Appeal from the
ELIZABETH H. WARNOCK,                            )    Circuit Court of
                                                 )    Cook County.
                Plaintiffs-Appellants,           )
                                                 )    No.  03 L 5204
        v.                                       )
                                                 )    Honorable
KARM WINAND & PATTERSON                          )    Lee Preston,
                                                 )    Judge Presiding.
                Defendant-Appellee.              )
                                                 )
                                                 )


OPINION UPON DENIAL OF PETITION FOR REHEARING

JUSTICE TULLY delivered the opinion of the court:

On May 1, 2003, plaintiffs-appellants, Todd and Elizabeth Warnock (plaintiffs) filed a legal malpractice suit against defendant-appellee, the law firm of Karm Winand & Patterson (defendant), as a result of an underlying real estate transaction. In the underlying transaction, plaintiffs retained Karen Patterson (Patterson), a partner at defendant, to represent them in the sale of their property in Winnetka, Illinois, to Tony and Winifred Brown (the Browns). The real estate transaction did not close and the Browns filed suit against plaintiffs. Plaintiffs retained the law firm of Arnstein & Lehr to represent them in the suit brought by the Browns. The end result of the Brown litigation was an adverse judgment entered against plaintiffs in the amount of $342,750, plus prejudgment interest. Plaintiffs appealed and, while the appeal was pending, plaintiffs ultimately settled the Brown litigation for $325,000.

1-06-0341

Nine months after the adverse judgment was entered by the circuit court, plaintiffs filed this legal malpractice suit against defendant. Plaintiffs alleged that Patterson failed to draft letter agreements properly during the sale of their property, which resulted in the adverse judgment in the Brown litigation. After discovery concluded in the legal malpractice case, defendant filed a motion for summary judgment, arguing that the two-year statute of limitations on plaintiffs' legal malpractice action had expired. The circuit court agreed and granted defendant's motion for summary judgment. Plaintiffs filed a motion to reconsider, but it was denied by the circuit court.

On appeal, plaintiffs claim that: (1) the two-year statute of limitations period had not expired when they filed their legal malpractice action; and (2) even if the two-year statute of limitations period had expired before they filed their legal malpractice action, defendant should be equitably estopped from raising a statute of limitations defense because it made misrepresentations to plaintiffs, which were designed to deter plaintiffs from filing a legal malpractice action. For the reasons stated below, we reverse and remand.

FACTS

In early 2000, plaintiffs intended to sell their property located at 381 Sheridan Road, Winnetka, Illinois. On March 2, 2000, a real estate contract was executed between plaintiffs and the Browns, stating a purchase price of $3,055,000. On March 4, 2000, plaintiffs retained Patterson, a partner at defendant firm, to represent them in this real estate transaction with the Browns.

The closing date originally was set for April 27, 2000. On April 26, 2000, the Browns' attorney contacted Patterson and requested an extension in order for the Browns to obtain the

2

necessary financing. Patterson drafted a letter and sent it to the Browns' attorney, which stated that plaintiffs agreed to extend the closing date to May 11, 2000, provided that the Browns deposited $10,000 earnest money in an escrow account. The letter agreement also contained a liquidated damages clause, which stated that the $10,000 earnest money would be forfeited in the event that the closing failed to occur "for any reason" on May 11, 2000. In addition to this liquidated damages clause, the letter agreement also stated that plaintiffs retained "all rights in law and in equity as a result of the default."

On May 11, 2000 and June 2, 2000, the Browns requested additional extensions to the closing date because they were struggling to obtain the necessary financing. The plaintiffs again agreed, but required the Browns to deposit additional funds in the escrow account. Patterson sent additional letter agreements memorializing the closing extensions. Both letter agreements contained a liquidated damages clause, confirming that plaintiffs were entitled to the escrow money if the closing did not occur. In addition to the liquidated damages clause, both letter agreements also stated that plaintiffs retained all their legal and equitable rights. As of June 2, 2000, the total amount deposited in escrow was $342,750.

On June 2, 2000, the Browns again failed to close on the property. As a result, Patterson required the Browns to sign a form providing authorization to release earnest money. This authorization to release earnest money stated that if the Browns could not obtain a written loan commitment by June 8, 2000, the $342,750 in earnest money would be released to plaintiffs. The Browns failed to obtain the necessary financing and, on June 16, 2000, the real estate sales contract was terminated and the total escrow amount of $342,750 was transferred to Plaintiffs'

account.

On August 1, 2000, the Browns' attorney sent a letter to Patterson asking that the $342,750 in earnest money be returned to the Browns. Plaintiffs refused to return the earnest money and, on October 4, 2000, the Browns filed suit against plaintiffs in the circuit court of Cook County, under the theory of unjust enrichment. Plaintiffs retained the law firm of Arnstein & Lehr to defend the Browns' lawsuit.

The Browns filed a motion for judgment on the pleadings, which the circuit court granted on August 2, 2002. In granting the Browns' motion, the circuit court reasoned that Patterson's letter agreements dated April 26, 2000, May 11, 2000, and June 2, 2000, which reserved plaintiffs' legal and equitable rights, rendered the liquidated damages clause unenforceable under Grossinger v. American National Bank & Trust Co., 240 Ill. App. 3d 737 (1992). The circuit court then entered judgment against plaintiffs in the amount of $342,750, plus prejudgment interest. Plaintiffs appealed. While the appeal was pending, plaintiffs reached a settlement with the Browns and agreed to pay them $325,000.

On May 1, 2003, plaintiffs filed this legal malpractice action against defendant, alleging that Patterson's failure to draft the letter agreements properly resulted in the adverse ruling in the Brown litigation. At the close of discovery, defendant filed a motion for summary judgment, arguing that the two-year statute of limitations had begun to run between August and October 2000, when plaintiffs retained Arnstein & Lehr to evaluate the merits of the demand letter sent by the Browns' attorney. On January 24, 2006, the circuit court granted defendant's motion for summary judgment. Plaintiffs filed a motion to reconsider, which was denied by the circuit court.

1-06-0341

Plaintiffs then filed this timely appeal.

DISCUSSION

On appeal, plaintiffs contend that the two-year statute of limitations for their legal malpractice action against defendant had not expired when they filed their complaint against defendant on May 1, 2003. Plaintiffs justify this position by asserting that the two-year statute of limitations did not begin to run until August 2, 2002, when judgment was entered against them in the underlying Brown litigation. Defendant disagrees with plaintiffs' position and asserts that the statute of limitations commenced in October 2000, when plaintiffs retained the law firm of Arnstein & Lehr to defend them in the Brown litigation. Defendant contends that since the statute of limitations began to run in October 2000, and plaintiffs did not file the legal malpractice case until May 1, 2003, the two-year statute of limitations bars plaintiffs' suit. We agree with plaintiffs.

This appeal stems from the circuit court's grant of defendant's motion for summary judgment. The standards governing summary judgment motions are well established. The purpose of summary judgment is not to try a question of fact, but to determine whether a genuine issue of material fact exists. Adams v. Northern Illinois Gas Co., 211 Ill. 2d 32, 42-43 (2004). "Summary judgment is proper where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." General Casualty Insurance Co. v. Lacey, 199 Ill. 2d 281, 284 (2002). When reviewing a circuit court's order granting summary judgment, our standard of review is de novo. Home Insurance

Co. v. Cincinnati Insurance Co., 213 Ill. 2d 307, 315 (2004).

Plaintiffs' action against defendant alleges legal malpractice. To prevail on a legal malpractice claim, the plaintiff client must plead and prove (1) that the defendant attorney owed the plaintiff client a duty of due care arising from the attorney-client relationship, (2) that the defendant attorney breached that duty, and (3) that as a proximate result, the plaintiff client suffered injury. Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd., 216 Ill. 2d 294, 306 (2005), citing Sexton v. Smith, 112 Ill. 2d 187, 193 (1986).

The injury in a legal malpractice action is not a personal injury (Eastman v. Messner, 188 Ill. 2d 404, 411 (1999)), and it is not the attorney's negligent act itself (Palmros v. Barcelona, 284 Ill. App. 3d 642, 646 (1996)). Rather, it is a pecuniary injury to an intangible property interest caused by the lawyer's negligent act or omission. See Eastman, 188 Ill. 2d at 411; Palmros, 284 Ill. App. 3d at 646. "For purposes of a legal malpractice action, a client is not considered to be injured unless and until he has suffered a loss for which he may seek monetary damages." Northern Illinois Emergency Physicians, 216 Ill. 2d at 306, citing Griffin v. Goldenhersh, 323 Ill. App. 3d 398, 407 (2001). The fact that the attorney may have breached his duty of care is not, in itself, sufficient to sustain the client's cause of action; on the contrary, even if negligence on the part of the attorney is established, no action will lie against the attorney unless that negligence proximately caused damage to the client. See Metrick v. Chatz, 266 Ill. App. 3d 649, 654 (1994). The existence of actual damages, therefore, is essential to a viable cause of action for legal malpractice (see Palmros, 284 Ill. App. 3d at 646) and "[u]nless the client can demonstrate that he has sustained a monetary loss as a result of some negligent act on the lawyer's part, his cause of

6

action cannot succeed" (Northern Illinois Emergency Physicians, 216 Ill. 2d at 307, citing Farm Credit Bank of St. Louis v. Gamble, 197 Ill. App. 3d 101, 103 (1990)).

Plaintiffs, in support of their contention that the statute of limitations did not begin to run until a final adverse judgment was entered in the Browns' suit against plaintiffs, rely on our decision in Lucey v. Law Offices of Pretzel & Stouffer, Chartered, 301 Ill. App. 3d 349 (1998). In Lucey, the plaintiff was employed by The Chicago Corporation, which was in the business of providing advice and brokerage services. Lucey, 301 Ill. App. 3d at 351. The plaintiff was contemplating resigning from The Chicago Corporation to start his own firm. Lucey, 301 Ill. App. 3d at 351. Prior to his resignation, the plaintiff sought advice from the defendant law firm regarding whether it would be legal for him to solicit one of The Chicago Company's clients at an upcoming meeting. Lucey, 301 Ill. App. 3d at 351. The defendant law firm advised the plaintiff that he could attend the meeting and announce his intention to leave The Chicago Corporation, so long as the plaintiff attended in his individual capacity and paid for the trip himself. Lucey, 301 Ill. App. 3d at 351. In reliance on this advice, the plaintiff attended the meeting, announced his intention to leave The Chicago Corporation, and resigned days later. Lucey, 301 Ill. App. 3d at 351. The client transferred its portfolio from The Chicago Corporation to the plaintiff shortly thereafter, and The Chicago Corporation sued the plaintiff. Lucey, 301 Ill. App. 3d at 352. The plaintiff initially retained the defendant law firm to defend him in the suit, but later retained different counsel. Lucey, 301 Ill. App. 3d at 352.

While the Chicago Corporation litigation was pending, the plaintiff, now represented by new attorneys, filed a legal malpractice action against the defendant law firm. Lucey, 301 Ill.

7

App. 3d at 352. The circuit court dismissed the plaintiff's legal malpractice action, holding that the malpractice action was premature. Lucey, 301 Ill. App. 3d at 353. This court explained that, in Illinois, "a cause of action for legal malpractice does not accrue until a plaintiff discovers, or within a reasonable time should discover, his injury and incurs damages directly attributable to counsel's neglect." Lucey, 301 Ill. App. 3d at 353, citing Goran v. Glieberman, 276 Ill. App. 3d 590, 594-95 (1995). Moreover, in Lucey, we clarified that, in Illinois, "a cause of action for legal malpractice will rarely accrue prior to the entry of an adverse judgment, settlement, or dismissal of the underlying action in which plaintiff has become entangled due to the purportedly negligent advice of his attorney." Lucey, 301 Ill. App. 3d at 356. Thus, since an adverse judgment had not yet been entered in The Chicago Corporation litigation, the plaintiff's damages were speculative and he did not know if the damages he incurred were directly attributable to the defendant law firm's advice. As such, we concluded that the statute of limitations had not begun to run and we affirmed the circuit court's dismissal of the plaintiff's prematurely filed legal malpractice suit.

In this case, the substantive issue is whether the letter agreements drafted by Patterson, which included both a liquidated damages provision and language reserving all legal and equitable rights in the event of the Browns' default, amounted to legal malpractice. When the Browns initiated litigation, plaintiffs did not know if the Brown litigation was merely a frivolous attempt to recover $342,750, or whether the letter agreements were drafted in contravention of Illinois law. In fact, plaintiffs could not have known that Patterson's letter agreements were faulty until the circuit court granted the Browns' motion for summary judgment. As stated above, in Illinois, "a cause of action for legal malpractice does not accrue until a plaintiff discovers, or within a

reasonable time should discover, his injury and incurs damages directly attributable to counsel's neglect." Lucey, 301 Ill. App. 3d at 353, citing Goran v. Glieberman, 276 Ill. App. 3d 590, 594-95 (1995). Since plaintiffs did not actually discover and reasonably could not have discovered that the letter agreements drafted by Patterson were negligently prepared until the circuit court entered judgment on the pleadings in the Browns' favor, we conclude that the entry of that adverse judgment marked the date on which the statute of limitations commenced.

Defendant asserts that the statute of limitations began to run when plaintiffs incurred additional attorney's fees from Arnstein & Lehr in 2000 and, in support of this assertion, relies on our decision in Goran v. Glieberman, 276 Ill. App. 3d 590. In Goran, the defendant attorney represented the plaintiff in an appeal from an adjudication of marriage dissolution and child custody. Goran, 276 Ill. App. 3d at 591-92. The defendant attorney filed an appellant's brief on the plaintiff's behalf, but the defendant attorney then withdrew from the appeal. Goran, 276 Ill. App. 3d at 591. The plaintiff subsequently hired another law firm to represent her, and the appellate court ordered the new law firm to redraft the brief that had been filed by the defendant attorney because the defendant attorney's brief did not comply with appellate court rules. Goran, 276 Ill. App. 3d at 591. The plaintiff ultimately lost her appeal and filed a legal malpractice claim against the defendant attorney, alleging that the defendant attorney was negligent in representing the plaintiff. Goran, 276 Ill. App. 3d at 592. The defendant attorney argued that the plaintiff's cause of action for legal malpractice arose when the appellate court required the plaintiff's new attorney to redraft the appellate brief that the defendant attorney had prepared in contravention of appellate court rules, which immediately caused the plaintiff to incur legal fees in the amount of

1-06-0341

$1,297. Goran, 276 Ill. App. 3d at 595. The defendant attorney stated that when the plaintiff had to pay her new attorney $1,297 to bring the defendant attorney's brief into compliance, she knew or reasonably should have known that she was injured by the defendant attorney's malpractice. Goran, 276 Ill. App. 3d at 596. This court confirmed that, in Illinois, a cause of action for legal malpractice accrues when the plaintiff knows or reasonably should know of his injury and that it was caused wrongfully and we held that the statute of limitations began to run when the appellate court required the new firm to duplicate the defendant attorney's efforts. Goran, 276 Ill. App. 3d at 596. As a result, this court concluded that the statute of limitations had expired.

In an attempt to establish that the statute of limitations began to run in October 2000 when plaintiffs hired Arnstein & Lehr to defend the Browns' suit, defendant suggests that our decision Goran stands for the proposition that subsequently incurred attorney fees automatically give rise to a cause of action for legal malpractice against a former attorney. While we believe that Goran was correctly decided, we cannot agree with defendant's broad reading of that case. Indeed, in Lucey, we clarified that "the Goran holding is a limited one: the incurring of additional attorney fees *may* trigger the running of the statute of limitations for legal malpractice purposes, *but only where it is clear, at the time the additional fees are incurred, that the fees are directly attributable to former counsel's neglect (such as through a ruling adverse to the client to that effect)."* (Emphasis added.) Lucey, 301 Ill. App. 3d at 355. Indeed, in Jackson Jordan, Inc. v. Leydig, Voit & Mayer, 158 Ill. 2d 240 (1994), our supreme court recognized the problem with defendant's position, which, if adopted, would require a client to file a provisional malpractice action against his attorney whenever the attorney's legal advice has been challenged. In Jackson

10

<u>Jordan</u>, our supreme court stated:

> "The mere assertion of a contrary claim and the filing of a lawsuit [by a third party are] not, in and of themselves, sufficiently compelling to induce the client to seek a second legal opinion. Meritless claims and nuisance lawsuits are, after all, a fairly commonplace occurrence. It would be a strange rule if every client were required to seek a second legal opinion whenever it found itself threatened with a lawsuit." <u>Jackson Jordan</u>, 158 Ill. 2d at 253.

Contrary to defendant's arguments, we continue to believe that, in Illinois, "a cause of action for legal malpractice will rarely accrue prior to the entry of an adverse judgment, settlement, or dismissal of the underlying action in which the plaintiff has become entangled due to the purportedly negligent advice of his attorney." <u>Lucey</u>, 301 Ill. App. 3d at 356. Here, while the filing of the Browns' lawsuit may have alerted plaintiffs to the possibility that Patterson's letter agreements were incorrectly drafted and motivated plaintiffs to hire Arnstein & Lehr, plaintiffs had no actionable damages prior to the an adverse judgment from the circuit court, which occurred on August 2, 2002, when the circuit court granted the Browns' motion for judgment on the pleadings. As such, we must conclude that the statute of limitations in plaintiffs' legal malpractice action began to run on August 2, 2002, and the circuit court's entry of summary judgment in defendant's favor in this case was improper.

In sum, we confirm that, in Illinois, "a cause of action for legal malpractice does not accrue until a plaintiff discovers, or within a reasonable time should discover, his injury and incurs damages directly attributable to counsel's neglect." <u>Lucey</u>, 301 Ill. App. 3d at 353, citing <u>Goran v.</u>

11

Glieberman, 276 Ill. App. 3d 590, 594-95 (1995). There may be rare cases in which it is painfully obvious, prior to any adverse ruling against the plaintiff client, that he has been injured as the result of professional negligence. As a general rule, however, a cause of action for legal malpractice will not accrue prior to the entry of an adverse judgment, settlement, or dismissal of the underlying action in which plaintiff has become entangled due to the purportedly negligent advice of his attorney. Lucey, 301 Ill. App. 3d at 356, citing Hermitage Corp. v. Contractors Adjustment vCo., 166 Ill. 2d 72, 84-87 (1995). Plaintiffs in this case did not discover and reasonably could not have discovered that Patterson's letter agreements were negligently prepared until August 2, 2002, when the circuit court granted the Browns' motion for judgment on the pleadings. As such, the two-year statute of limitations on plaintiffs' legal malpractice action began to run on August 2, 2002.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and remanded.

Reversed and remanded.

O'BRIEN, P.J., and GALLAGHER, J., concur.