2024 IL App (1st) 232161-U

Fourth Division
Filed August 22, 2024

No. 1-23-2161

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | |
|---|---|
| NORCOR CICERO ASSOCIATES, LLC,<br><br>    Plaintiff-Appellee,<br><br>    v.<br><br>TITLE LENDERS, INC.,<br><br>    Defendant-Appellant. | Appeal from the<br>Circuit Court of Cook County<br><br>No. 21 M1 702178<br><br>The Honorable Barry Goldberg,<br>Judge, presiding. |

JUSTICE OCASIO delivered the judgment of the court.
Presiding Justice Rochford and Justice Martin concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The entry of summary judgment in favor of landlord was affirmed where tenant, a payday lender, was not prohibited from opening or continuing its regular business operations by a statute capping interest rates on payday loans and, for that reason, could not take advantage of an early-termination provision in the lease.

¶ 2    This is an action for breach of a commercial lease brought by the landlord, plaintiff-appellee Norcor Cicero Associates, LLC (Norcor), against its tenant, defendant-appellant Title Lenders, Inc., a payday lender. The heart of the dispute is whether the Predatory Loan Prevention Act (815 ILCS 123/15-1-1 *et seq.* (West 2022)), which placed a cap on the interest rates for payday loans, "prohibited" Title Lenders' "regular business operations" at the leased premises, thereby triggering Title Lenders' contractual right to terminate the lease upon 30 days' written notice. The parties rely on differing interpretations of the early-termination provision. Title Lenders argues

that its "regular business operations" involve making loans at rates that are now prohibited by law, while Norcor maintains that, although the rate cap limits profits, it does not prohibit Title Lenders' "regular business operations" of making payday loans. On cross-motions for summary judgment, the trial court adopted Norcor's interpretation, and it entered summary judgment for Norcor. We agree with Norcor's construction of the lease and, accordingly, affirm.

¶ 3                                    BACKGROUND

¶ 4      In September 1998, a business known as Advance America signed an agreement to lease premises from Norcor at the Cicero Annex Shopping Center on the southwest side of Chicago. The lease allowed the premises to be used "to operate a cash advance store, including payday advances or advances against overdraft of personal checks, and other related and incidental services." The agreement also gave the tenant a right to terminate the lease early if its "regular business operations" were prohibited by law:

> "Tenant shall have the right to terminate the Lease upon thirty (30) day's [*sic*] prior written notice to the Landlord in the event that Tenant is prohibited by any federal, state or local statute, ordinance, regulation, court order or administrative decision from opening or continuing it's [*sic*] regular business operations at the Premises. Upon termination of the Lease as provided herein, Tenant and Landlord shall have no further liability under the Lease."

Advance America assigned its rights under the lease to Title Lenders in 2000. The parties periodically extended the lease, most recently through 2023.

¶ 5      In January 2021, the General Assembly passed Senate Bill 1792. Its provisions included the Predatory Loan Prevention Act, which prohibits certain consumer lenders from "contract[ing] for or receiv[ing] charges exceeding a 36% annual percentage rate on the unpaid balance of the amount financed for a loan." 815 ILCS 123/15-5-5 (West 2022). The parties agree that, on February 1, Title Lenders notified Norcor that it would be exercising its right to terminate the lease.

¶ 6    The governor signed Senate Bill 1792 into law on March 23 as Public Act 101-658, and it became effective immediately. Two days later, Jeffrey Silverman, the president of Title Lenders, sent a letter to Ilija Pod, Norcor's property manager, explaining that the Predatory Loan Prevention Act "negatively affects the operation of our business," making its continued operation "unfeasible" and forcing it to "wind down operations in all our stores, vacating each premises." On March 31, a representative of Title Lenders emailed Pod to "formally advise" that Title Lenders had closed the store and vacated the property and that the keys were being returned via FedEx. The parties agree that, on that same date, Title Lenders surrendered possession of the leased premises to Norcor. On April 27, an attorney representing Norcor sent Title Lenders a letter demanding payment of the April rent, which had been due on the first of the month. The demand was not satisfied.

¶ 7    Norcor sued Title Lenders in June 2021 for breach of the lease. The complaint sought unpaid rent, consequential damages, court costs, and attorney fees.[1] Title Lenders raised two affirmative defenses. The first alleged that Norcor failed to mitigate its damages by seeking a new tenant. The second alleged that Title Lenders was not liable because it had exercised its early-termination right under the lease.

¶ 8    The parties eventually both moved for summary judgment. As neither party disputed that Title Lenders had stopped paying rent after March 2021, their motions focused on whether the Predatory Loan Prevention Act prohibited Title Lenders "from opening or continuing [its] regular business operations at the Premises," thereby permitting Title Lenders to exercise its right to terminate the lease.

¶ 9    Norcor's motion, which was filed first, argued that the Predatory Loan Prevention Act "did not in any way make [Title Lenders'] operations illegal or commercially impracticable." It argued

---

[1]    The complaint also asked the court to award Norcor possession of the premises, but the trial court later granted summary judgment on the issue of possession in favor of Title Lenders, which had surrendered possession of the premises on March 31, 2021. Neither party challenges this determination.

that the new statute only limited the interest rate that could be charged by payday lenders, reducing—but not eliminating—Title Lenders' potential profits. Norcor's evidentiary attachments to the motion did not address the early-termination provision, the Predatory Loan Prevention Act, or that statute's effect on Title Lenders. Instead, Norcor asserted that Title Lenders' claim that it had a right to terminate under the lease presented "no question of fact."

¶ 10    In its motion for summary judgment, Title Lenders contended that the Predatory Loan Prevention Act made it impossible for it to continue doing business. It relied heavily on an affidavit from Silverman, the company's president. Silverman averred that Title Lenders "operated a payday loan business" and that making such loans was its "primary business purpose," generating more than 95% of the business's revenue. According to Silverman, the Predatory Loan Prevention Act contained nothing that reduced the cost of making payday loans or limited lenders' risk when making such loans, and its enactment meant that Title Lenders "could not continue its regular business operations in the State of Illinois," including its operations at the Cicero Annex store, and "forced" it "to close all of its business operations and retail stores." Silverman asserted that, before the Predatory Loan Prevention Act came into effect, Title Lenders operated more than 30 payday-loan retail stores in Illinois; as of October 2022, it operated none.

¶ 11    In addition to Silverman's sworn affidavit, Title Lenders also relied on several online news articles about the passage of the Predatory Loan Prevention Act and its likely effect on the payday-loan industry in Illinois. Citing articles published by WTTW News and CNBC, Title Lenders asserted that the average annual interest rates in Illinois were 297% for payday loans and 179% for automobile title loans. Title Lenders highlighted that the chief financial officer of an unrelated payday-lending company had been quoted in an article posted on the website of a Hannibal, Missouri, television station as saying that it had closed all of its stores in other states with 36% rate caps and would be doing the same in Illinois. Title Lenders also cited an article published on the *Evanston Now* website in November 2021 stating that the closure of "hundreds" of payday-loan stores in Illinois after the Predatory Loan Prevention Act came into effect was an intended effect of the legislation. When Norcor objected to Title Lenders' reliance on these articles because

they were not pleadings, depositions, admissions, or affidavits, Title Lenders asked the court to take judicial notice of the facts contained in the articles; the record does not specifically indicate whether the court chose to do so.

¶ 12　Agreeing with Norcor that "the Predatory Loan Prevention Act did not prohibit [Title Lenders] from continuing to operate its business in Illinois" and instead "only reduced and placed a cap on the amount of interest that [Title Lenders] could charge in issuing a pay day loan," the trial court granted Norcor's motion for summary judgment and denied Title Lenders' motion. After granting Norcor's contested motion for attorney fees, the court entered judgment in favor of Norcor for $65,827.91 in unpaid rent, $22,780.50 in attorney fees, and $468.85 in costs.

¶ 13　　　　　　　　　　　　ANALYSIS

¶ 14　On appeal, Title Lenders argues that it was entitled to summary judgment in its favor and that the trial court erred by denying its motion for summary judgment, granting Norcor's motion, and entering judgment in favor of Norcor. The parties' dispute on appeal solely concerns Title Lenders' claim that it had a right to terminate the lease because the Predatory Loan Prevention Act prohibited it from continuing with its regular business operations.

¶ 15　"The purpose of summary judgment is not to try a question of fact, but to determine whether a genuine issue of material fact exists." *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 305 (2005). Summary judgment is appropriate if "the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Thounsavath v. State Farm Mutual Automobile Insurance Co.*, 2018 IL 122558, ¶ 15; see 735 ILCS 5/2-1005(c) (West 2022). "Because summary judgment is a drastic means of disposing of litigation, a court must exercise extraordinary diligence in reviewing the record so as not to preempt a party's right to fully present the factual basis for its claim." *Northern Illinois Emergency Physicians*, 216 Ill. 2d at 305. Summary judgment should be granted only if "the right of the moving party is clear and free from

doubt." *Id.* The parties' cross-motions for summary judgment imply that they agree that this case presents no genuine factual disputes and is appropriately resolved as a matter of law. *West Bend Mutual Insurance Co. v. Krishna Schaumburg Tan, Inc.*, 2021 IL 125978, ¶ 30.

¶ 16     Norcor's claim is for breach of contract. That claim has four elements: "(1) the existence of a valid and enforceable contract, (2) substantial performance by the plaintiff, (3) breach by the defendant, and (4) damages caused by that breach." *Ivey v. Transunion Rental Screening Solutions, Inc.*, 2022 IL 127903, ¶ 28. As during summary-judgment proceedings in the trial court, Title Lenders does not contest that the lease was valid and enforceable, that Norcor performed its obligations under the lease, or that Norcor is entitled to damages in the event Title Lenders is found to have breached. Title Lenders only challenges the trial court's finding that the Predatory Loan Prevention Act's rate cap, which prohibited charging an effective interest rate of more than 36% annually on payday loans, did not trigger the lease's early-termination provision because it did not altogether prohibit making payday loans.

¶ 17     A lease is a contract, and we construe it accordingly. *Fuller Family Holdings, LLC v. Northern Trust Co.*, 371 Ill. App. 3d 605, 620 (2007). The construction of a contract presents a question of law that we review *de novo*. *Gallagher v. Lenart*, 226 Ill. 2d 208, 219 (2007). Hence, issues of "[c]ontract construction and interpretation are generally well suited to disposition by summary judgment." *William Blair & Co. v. FI Liquidation Corp.*, 358 Ill. App. 3d 324, 334 (2005). When construing a contract, the "objective is to determine and give effect to the intent of the parties at the time they entered into the contract." *Clanton v. Oakbrook Healthcare Centre, Ltd.*, 2023 IL 129067, ¶ 30. "A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." *Gallagher v. Lenart*, 226 Ill. 2d 208, 233 (2007). "Moreover, because words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others." *Id.* "The intent of the parties is not to be gathered from detached portions of a contract or from any clause or provision standing by itself." *Id.* "When presented with clear and unambiguous language, the intent of the parties must be determined from the language of the

contract itself and given its plain and ordinary meaning." *Storino, Ramello & Durkin v. Rackow*, 2015 IL App (1st) 142961, ¶ 18. "[L]anguage in a contract is not rendered ambiguous simply because the parties disagree." *Joyce v. DLA Piper Rudnick Gray Cary LLP*, 382 Ill. App. 3d 632, 637 (2008).

¶ 18    The parties dispute whether Title Lenders was "prohibited by" the Predatory Loan Prevention Act's rate cap "from opening or continuing [its] regular business operations" at the leased premises. Each party's interpretation turns on the meaning of "regular business operations." Title Lenders interprets "regular business operations" to mean the ordinary methods and practices that it uses in the course of transacting business, one of which is offering loans at interest rates that are now prohibited by the Predatory Loan Prevention Act. Norcor interprets "regular business operations" to mean the operation of a store at which Title Lenders can transact its normal business of making payday loans, which is restricted by the Predatory Loan Prevention Act, but not prohibited.

¶ 19    Contract interpretation, though, should not rest on a "review of isolated terms." *St. Paul Mercury Insurance v. Aargus Security Systems, Inc.*, 2013 IL App (1st) 120784, ¶ 64. If we widen our view even a little bit, the meaning of "regular business operations" quickly comes into focus. The early-termination right is not triggered by a prohibition of Title Lenders' "regular business operations." Instead, it arises "in the event that [Title Lenders] is prohibited by [law] from *opening or continuing* [its] regular business operations at the Premises." (Emphasis added.) The full context of the provision indicates that "regular business operations" must refer to something that can be opened (or closed) and continued (or ceased). Norcor's interpretation fits. One might describe the commencement of business activity at a particular store as the opening of regular business operations. See *Webster's Third New International Dictionary* 1580 (1986) (giving, as an example, "the [opening] of two new stores helped the neighborhood"). And once opened, those operations might be described as "continuing" until they are ended for good. Title Lenders' interpretation, by contrast, does not fit the semantic context of the early-termination provision. While the ongoing use of certain business practices or methods of operation might be described as "continuing," one

would never describe the act putting those practices or methods into place as "opening" them, much less as "opening \*\*\* regular business operations." Within the context of the entire provision, Title Lenders' reading is not a plausible one. Norcor's is.

¶ 20 Title Lenders argues that Norcor's interpretation of "regular business operations" leaves "regular" meaningless.[2] See *Hufford v. Balk*, 113 Ill. 2d 168, 172 (1986) ("In construing the contract, effect must be given to each clause and word used, without rejecting any words as meaningless or surplusage.") We do not agree. In Norcor's reading, "regular" clarifies that the early-termination right arises if Title Lenders is prohibited from transacting its *normal* business of making payday loans. Taken alone, "business operations" might easily be interpreted as meaning the transaction of *any* type of business so long as it was both suitable to the premises and authorized by Norcor pursuant to the lease's use provision.

¶ 21 Based on the foregoing, we find that the early-termination provision of the lease is unambiguous, and we construe it to apply only if Title Lenders was legally prohibited from operating a payday-loan store at the leased premises. Although Title Lenders has put forward uncontroverted evidence that the Predatory Loan Prevention Act had the practical effect of forcing Title Lenders to close its operations at the leased premises (and elsewhere) by making those operations commercially infeasible, the fact remains that neither the rate cap nor any other provision of the Predatory Loan Prevention Act prohibited Title Lenders from operating a payday-loan store. The trial court correctly found, as a matter of law, that the Predatory Loan Prevention Act did not mean that Title Lenders was "prohibited \*\*\* from opening or continuing [its] regular business operations at the Premises" and, therefore, that Title Lenders did not have a contractual right to terminate the lease. It follows that Title Lenders' undisputed failure to pay rent starting in

---

[2] We note that Title Lenders' brief supports this argument by citing to an unpublished order entered in 2019. Counsel is reminded that unpublished orders entered before 2021 are not citable for any purpose "except to support contentions of double jeopardy, *res judicata*, collateral estoppel or law of the case." Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023).

April 2021 was a breach of the lease, entitling Norcor to summary judgment on its breach-of-contract claim.

¶ 22                                  CONCLUSION

¶ 23    Because Title Lenders was not prohibited by law from continuing to operate a payday-loan store at the leased premises, the trial court's entry of summary judgment in Norcor's favor is affirmed.

¶ 24    Affirmed.